FIFTH DIVISION 

                                              September 30, 1998             

   

   

    

   

   

No. 1-96-3420 

In re MARRIAGE OF              )  Appeal from the

                               )  Circuit Court of

YVONNE B. STEINBERG,           )  Cook County 

                               )

Petitioner-Appellant,     )

                               )

and                       )    

                               )

RICHARD C. W. STEINBERG,       )  Honorable, 

                               )  Richard B. Berland, 

Respondent-Appellee.      )  Judge Presiding. 

JUSTICE GREIMAN delivered the opinion of the court: 

Following a judgment of dissolution of marriage entered on May 15, 1996, petitioner Yvonne B. Steinberg (Yvonne) seeks reimbursement to the marital estate from three nonmarital assets awarded to respondent Richard C. W. Steinberg (Richard): (1) the accounts receivable in Richard's medical corporation, (2) the money in Richard's corporate checking account, and (3) the interest earned on a certain municipal bond (the Stein Roe account).  

This appeal primarily raises two issues: (1) whether the accounts receivable from a nonmarital corporation are subject to reimbursement; and (2) whether the marital estate in the present case is entitled to reimbursement from the accounts receivable.  In addition, Yvonne maintains that the marital estate is entitled to reimbursement from the checking account for Richard's corporation and for cash allegedly given to Richard's mother in amounts equivalent to the interest earned in the Stein Roe account held in Richard's name only. 

We find that accounts receivable are subject to reimbursement, but in the present case the marital estate is not entitled to reimbursement from the accounts receivable because the annual income received by Richard during the course of the marriage adequately compensated the marital estate.  For the same reason we find that the marital estate is not entitled to reimbursement from the corporate checking account.  We also find that the record does not support reimbursement for the amount of interest earned on Richard's municipal bond in the Stein Roe account.  Thus, we affirm the trial court's judgment.  

On March 18, 1984, Yvonne and Richard married and later had two children: a son named Ryan, who was born on October 7, 1985, and a daughter named Britt, who was born on October 20, 1986.   Yvonne filed a petition for dissolution of marriage on May 19, 1994, and Richard filed a counterpetition for dissolution of marriage on October 3, 1994.  At the time of trial in April 1996, Yvonne was 41 years old and Richard was 46 years old.   

At trial, both Richard and Yvonne testified.  In addition, Richard presented three witnesses: Dr. Stanley Matthew Zydlo, Jr., chief of emergency services at Northwest Community Hospital; Kathleen Keyes, the sole office employee of Richard; and June Steinberg, the mother of Richard.  The record does not include any exhibits presented at trial.  The record reveals the following evidence relevant to the three nonmarital assets at issue on appeal.

Richard began his medical practice in October 1980, 
i.e.
, about 3 1/2 years before his marriage to Yvonne in March 1984.  In 1981, as a self-employed, sole practitioner, Richard incorporated his medical practice as Richard C. W. Steinberg, M.D.,S.C., of which he was and is the sole shareholder.  The corporation collects the fees, pays the expenses for his medical practice and provides him with a salary.

Regarding the accounts receivable, the parties stipulated that, at the time of dissolution, the value of the collectibles for Richard's corporation was $215,000.  Richard testified that, prior to the marriage, his accounts receivable amounted to $125,000, and that the collection rate at that time ranged between 75% to 80%.   

Regarding the corporate checking account, Richard testified that, before marriage, the amount in his corporate checking account was $20,477.09.  At the time of dissolution, the corporate checking account had an approximate balance of $24,000.

Richard drew a regular, gross salary of $10,000 per month from the corporation during the course of marriage.  Richard would deposit the net amount of his monthly salary (about $6,445) in a joint checking account, from which Yvonne paid the bills.  Richard also received annual bonuses during the course of the marriage.  Richard's annual income, including salary and bonus, during the course of the marriage was as follows: 

1984 - $157,500  

1985 - unknown (tax returns apparently were unavailable) 1986 - $230,000    

1987 - $326,800    

1988 - $274,000   

1989 - $249,000   

1990 - $301,000     

1991 - $288,250    

1992 - $286,000   

1993 - $242,000    

1994 - $157,500.   

Richard always worked in family practice and built his practice by making himself available for emergency room calls.  From at least 1984 until 1990, Richard worked emergency room call from 18 to 21 nights a month because, by being available so often, Richard received a tremendous number of referrals, including patients admitted to the hospital for care and patients coming to his office for follow-up treatment or visits.  After 1990, new hospital rules reduced the amount of time a doctor could work emergency room call.  In 1991 and 1992, Richard's number of call nights decreased to about 12 nights a month.  In early 1993, the hospital rules again changed and Richard's nights on call decreased to seven per month.  After 1994, the call schedule reduced Richard's nights per month to three.  As of May 1, 1996, the then current call schedule allowed Richard only two nights per month.  Richard testified that his income decreased because the changes in the rules for the hospital emergency room reduced his number of patients.  In addition, Richard's income decreased because medical conditions that had been treated on an inpatient basis were now treated on an outpatient basis and because managed care groups reduced the number of his patients.  

Dr. Stanley Matthew Zydlo, Jr., chairman of the department of emergency medicine at Northwest Community Hospital, and Kathleen Keyes essentially corroborated Richard's testimony.  Dr. Zydlo testified that the emergency room is a source of added patients for doctors and that the hospital rules were changed to reduce the amount of time that a doctor could work in the emergency room.  The rules were changed because some individuals might be overworked or getting too many patients.  

Kathleen Keyes has worked in Richard's office for 14 years.  Keyes performs all of the office work, takes care of patients' charts, performs some nursing functions, and prepares the billing.  At the time of her testimony, Keyes was the only employee in Richard's office.  Keyes testified that the number of Richard's patients decreased over the years and the billing procedure has remained virtually the same.  Since 1993, Keyes has collected the payments from Richard's patients and deposited them all into the corporate checking account.  Keyes testified that the current balance in the checking account was approximately $24,000.   

Yvonne was not employed outside the home during the tenure of her marriage to Richard and was unemployed for six months before the marriage.  Prior to marriage, Yvonne earned a bachelor's degree in merchandising and marketing from Northern Illinois University in 1977 and worked for various employers, including a brokerage firm and several different advertising agencies.  The highest annual salary received by Yvonne was $19,000.  

Regarding the Stein Roe account, Richard and Yvonne agreed that in 1989 June Steinberg, Richard's mother, gave Richard a gift of $10,000 and with this money Richard acquired a Stein Roe high yield municipal bond in his own name.  At the time of trial the balance of the Stein Roe account was $17,523.92.  

Yvonne testified that the cash equivalent of the interest earned on the Stein Roe account was given to Richard's mother.  Yvonne stated that the interest is paid on the Stein Roe account twice a year.  When the account statement arrived, Yvonne would prepare a check made out to cash from their joint checking account in the amount equal to the interest earned in the Stein Roe account.  Yvonne produced the cancelled checks to verify that checks were made out to cash in amounts equivalent to the interest earned.  According to Yvonne, the cash would then be placed in an envelope.  In turn, either Richard would give the cash to his mother when they visited her in Florida or Yvonne would give the cash to her.   

Richard testified that he was not aware of any such payment to his mother and did not instruct Yvonne to make such payments.  Richard testified that "[i]f she [Yvonne] cashed checks in those amounts *** I'd like to know where the cash went."   

June Steinberg testified that she set up the Stein Roe account in Richard's name in the amount of $10,000.  June Steinberg presented no testimony as to the interest earned in this account.  

Following trial, the court entered a judgment of dissolution of marriage on May 15, 1996.  The judgment awarded to Richard certain property as nonmarital: the Stein Roe high yield municipal bond with an approximate balance of $17,523.92; a 1968 car (Jaguar); furniture valued about $2,000; Chicago Bears' tickets; and Richard's medical practice, including the accounts receivable having a stipulated value of $215,000, and the corporate checking account with an approximate balance of $24,000.  Yvonne did not receive any nonmarital property.  

In dividing the marital property, the court awarded Richard certain items from the marital home in Barrington, his car (Acura), and the furniture and furnishings at his then current residence in Palatine.  Yvonne was awarded certain items from the marital home in Barrington and her car (Lexus).  The court also    ordered that the marital estate was entitled to reimbursement from funds designated from Richard's medical corporation's pension plan and from a separate corporate profit-sharing plan.   The marital items and their value that were awarded to Richard are: 

1) the marital home in Barrington with a          $222,144.00 

   stipulated value of $300,000 less the 

   mortgage of $77,856   

2) life insurance policy                            18,471.64 

3) share in a Smith Barney joint account           205,691.34 

4) share in the corporate pension plan             148,705.40 

5) share in the corporate profit-sharing plan     
 123,820.97
  

                                        Total:    $718,833.35. 

The marital items and their value that were awarded to Yvonne are: 

1) a Smith Barney account in her name             $111,742.85 

2) an individual retirement account (IRA) 

   in her name                                      14,764.20 

3) an IRA in Richard's name                         23,301.64 

4) cash at home                                      2,000.00 

5) money in her checking account                     3,000.00 

6) share in a Smith Barney joint account           278,288.27 

7) share in the corporate pension plan             181,751.03 

8) share in the corporate profit-sharing plan      
151,336.73
 

                                        Total:    $766,184.72. 

From these values, the marital assets totaled $1,485,018.07.  From the court's division of the marital estate, Yvonne received a 51.6% share and Richard received a 48.4% share.  

On June 11, 1996, Yvonne filed a motion to vacate, modify or reconsider the judgment of dissolution of marriage.  In her postrial motion, Yvonne contended that the trial court erred in several findings, including its rulings regarding the collectible receivables, the money in the corporate checking account, and the interest paid on the Stein Roe account.  

Following a hearing on August 20, 1996, the trial court denied Yvonne's postrial motion.  Thereafter, the issue of attorney fees was decided and Yvonne filed the instant appeal.

As a threshold matter, we reject Richard's assertion that Yvonne waived any claim to reimbursement from the subject assets by failing to raise the issue at trial.  Richard maintains that waiver applies because Yvonne described the subject assets as nonmarital in her closing argument and did not raise the issue of reimbursement until she filed her postrial motion.  First, the description of the subject assets as nonmarital in Yvonne's closing argument only addresses the 
classification
 of the assets and has nothing to do with reimbursement, which is not triggered until the asset is classified.  It is axiomatic that one type of estate, such as the marital estate, cannot be reimbursed from another type of estate, such as the nonmarital estate, until the asset is classified in a particular estate.  Second, the issue of reimbursement was presented through the evidence and testimony presented at trial.  The most obvious proof that reimbursement was an issue at trial is the fact that the trial court's judgment specifically ordered reimbursement from two of Richard's nonmarital assets, 
i.e.
, the pension plan and the profit-sharing plan.  We cannot say from the record before us that Yvonne waived the issue of reimbursement for purposes of appeal.  

On appeal, Yvonne first asserts that accounts receivable from a nonmarital corporation are an asset and, thus, subject to reimbursement.  Yvonne further asserts that the instant marital estate was entitled to be reimbursed from this nonmarital asset.  As to the accounts receivable, Yvonne seeks reimbursement to the marital estate of $121,250, which represents the increase in accounts receivable from the time of the marriage ($93,750)
(footnote: 1) to the stipulated value at the end of the marriage ($215,000).  

Richard contends that Yvonne failed to prove the elements necessary to establish entitlement to reimbursement from the accounts receivable.  Richard first argues that Yvonne's proof failed because she did not present evidence to establish the overall value of his medical corporation and, therefore, the court could not determine whether Richard's personal efforts resulted in substantial appreciation in the value of the nonmarital medical corporation.  Richard also argues that "as accounts receivable are collected they become part of Richard's income in which support is based" and, therefore, Yvonne would receive a double benefit from the accounts receivable if they were used for both reimbursement and support purposes.  In addition, Richard maintains that his salary during the course of the marriage already adequately compensated the marital estate. 

We initially emphasize that, contrary to the many arguments advanced by Richard in his appellate brief, Yvonne does not contest the classification of the subject three assets as nonmarital.  Regarding nonmarital assets, the Illinois Marriage and Dissolution of Marriage Act (Act) specifically provides that the increase in the value of nonmarital property is also nonmarital property.  750 ILCS 5/503(a)(7) (West 1996).  Although such appreciation of nonmarital property is classified as nonmarital, the increase is subject to reimbursement.  750 ILCS 5/503(a)(7) (West 1996).  The issue on appeal does not involve the classification of the subject assets as nonmarital but rather whether the marital estate is entitled to reimbursement from the three nonmarital assets.  A trial court's failure to reimburse the marital estate will not be disturbed on appeal unless such failure constitutes an abuse of discretion.  
In re Marriage of Snow
, 277 Ill. App. 3d 642, 650 (1996).     

Section 503(c)(2) of the Act governs reimbursement: 

"When one estate of property makes a contribution to another estate of property, or when a spouse contributes personal effort to non-marital property, the contributing estate shall be reimbursed from the estate receiving the contribution notwithstanding any transmutation; provided, that no such reimbursement shall be made with respect to a contribution which is not retraceable by clear and convincing evidence, or was a gift, or, 
in the case of a contribution of

personal effort of a spouse to non-marital property, 

unless the effort is significant and results in 

substantial appreciation of the non-marital property
.   Personal effort of a spouse shall be deemed a contribution by the marital estate.  The court may provide for reimbursement out of the marital property to be divided or by imposing a lien against the non- marital property which received the contribution."   (Emphasis added.)  750 ILCS 5/503(c)(2) (West 1996). 

Under this statutory scheme, reimbursement, if any, goes to an estate, not a spouse.  
E.g.
, 
In re Marriage of Morse
, 143 Ill. App. 3d 849, 855 (1986).  In the present case, the "contributing estate" is the marital estate of Richard and Yvonne because the personal effort of either spouse, Richard or Yvonne, constitutes a contribution by the marital estate.  Accordingly, the personal effort of Richard toward the accounts receivable constitutes a contribution by the marital estate.  In turn, "the estate receiving the contribution" is the nonmarital estate of Richard.   Richard suggests that the accounts receivable should not be subject to reimbursement because "accounts receivable are a factor in reaching the value of a marital corporation, but in themselves are not a separate asset of any estate."  Richard argues that absent the valuation of the entire corporation, including liabilities and overhead expenses, the accounts receivable cannot be deemed a separate asset.  We disagree. 

Courts consistently and repeatedly have held that accounts receivable are distinct assets with an ascertainable value.  See, 
e.g.
, 
In re Marriage of Lee
, 246 Ill. App. 3d 628 (1993); 
In re Marriage of Tietz
, 
238 Ill. App. 3d 965 (1992); 
In re Marriage of Feldman
, 199 Ill. App. 3d 1002 (1990).  Illinois law holds that "[a]ccounts receivable *** are assets already earned with a known value but have not yet been collected."  
Tietz
, 238 Ill. App. 3d at 977.  

Richard attempts to distinguish the cases of 
Lee
, 
Teitz
, and 
Feldman
 on the basis that they involved the property division of a marital corporation and, therefore, required that the value of the accounts receivable be considered as only a part of the valuation of the entire corporation.  We find such distinction unpersuasive.  

Accounts receivable are distinct assets of a business and have a value, independent and separate from the corporation.  The accounts receivable, not the entire corporation, are the assets at issue.  See 
In re Marriage of Pancner
, 111 Ill. App. 3d 546, 550 (1982) ("the trial court did not err in failing to assign a value to the business since it had determined that the business was nonmarital property").  As accounts receivable are assets subject to valuation for purposes of a corporation to be divided, so also accounts receivable should be assets subject to reimbursement when they are a part of a nonmarital estate.       

Richard also submits that "as accounts receivable are collected they become part of Richard's income in which support is based."  To allow the accounts receivable to be subject to reimbursement, according to Richard, would constitute a double benefit to Yvonne because Richard now pays part of his income to support her.  This argument has already been rejected by the court in 
Tietz
, which held that "[a]ccounts receivable are only 'future income' in the sense they will be collected in the future."  
Tietz
, 238 Ill. App. 3d at 977.  

For all of the foregoing reasons, we hold that accounts receivable are subject to reimbursement under section 503(c)(2) of the Act.  Accordingly, we next consider whether the marital estate in the present case is entitled to reimbursement under the facts of the present case. 

To establish a right to reimbursement, section 503(c)(2) requires, in relevant part, "significant" personal effort by either spouse resulting in "substantial appreciation of the non-marital property."  
Snow
, 277 Ill. App. 3d at 650.  We find that both of these elements have been satisfied.  First, the accounts receivable in Richard's corporation, regardless of the amount, indisputably exist due to the personal effort of Richard, a sole practitioner.  Second, we reject Richard's insistence that the entire corporation would have to be valued to determine whether the nonmarital property substantially appreciated.  The nonmarital property at issue is the accounts receivable.  The evidence established that the accounts receivable increased over $120,000 from the time of marriage (about $94,000) to the end of the marriage ($215,000).  Thus, the accounts receivable more than doubled in value during the course of the 10-year marriage.  If needed, we would find it difficult to deny reimbursement on the grounds that such an increase was not "substantial."  

In addition to these statutory elements, to determine "whether the marital estate is entitled to reimbursement from a nonmarital business for the contribution of personal efforts of a spouse, the court may inquire as to whether the spouse was reasonably compensated by the business for those efforts.  If the spouse has already been reasonably compensated for the personal effort, no reimbursement is necessary."  
In re Marriage of Werries
, 247 Ill. App. 3d 639, 648 (1993), citing 
In re Marriage of Perlmutter
, 225 Ill. App. 3d 362, 372 (1992); 
Morse
, 143 Ill. App. 3d at 855; 
In re Marriage of Landfield
, 209 Ill. App. 3d 678 (1991).  The rationale of this principle is that a spouse's salary obtained from the nonmarital business during the course of marriage is marital property and, thus, the marital estate has already been compensated.  
Perlmutter
, 225 Ill. App. 3d at 372 (and authority cited therein).  
Yvonne correctly acknowledges in her brief that "[i]f the compensation is reasonable, the nonmarital estate is not forced to reimburse the marital estate because the salary during the marriage is, in fact, the compensation that was due."  

We find that Richard's compensation during the marriage adequately compensated the marital estate to defeat reimbursement from the accounts receivable.  Richard received an annual income ranging from $157,500 to $320,800 during the course of the marriage.  Yvonne's contention that Richard's salary could have been higher in the later years of their marriage does not establish that his income was inadequate compensation to the marital estate for the purpose of entitlement to reimbursement.  See 
Perlmutter
, 225 Ill. App. 3d at 372 ("the fact that [the husband] could have received a higher salary, as implied by [the wife], does not mean that he was not adequately compensated").  At trial, Richard presented testimony explaining the reasons for the decline in his income.  In its judgment, the trial court accepted Richard's explanation and specifically found as follows:

"The Court generally believes that the Respondent's income has declined the last few years for the reasons which he articulated during the trial, including, but not limited to his loss of patients due to the changing nature of health care delivery in our country (managed care), the reduction in the amount of time he is allowed to be 'on call' in the emergency room, (which has resulted in a loss of patient referrals as well as the number of patients he cares for at the hospital at any given time), the reduction in the length of time a patient is allowed to remain in the hospital, if at all, as well as the reduction in the amount which he is able to charge for certain tests and procedures, et cetera, et cetera."   

In sum, we find that accounts receivable are subject to reimbursement under section 503(c)(2) of the Act.  In the present case, however, the marital estate is not entitled to reimbursement from the nonmarital accounts receivable because Richard's income has already adequately compensated the marital estate.  

Next, Yvonne asserts that the marital estate was entitled to be reimbursed from the corporate checking account.  From this account, Yvonne seeks reimbursement of $3,523, which represents the increase over the course of the marriage from $20,477 to $24,000.  Like the accounts receivable, the money in the  corporate checking account derived from the personal efforts of a spouse, 
i.e.
, Richard.  Even assuming that the approximate 17% increase in the value of the checking account was "substantial appreciation" for the purpose of section 503(c)(2), we find that the income of Richard constituted adequate compensation to the marital estate and, therefore, reimbursement would not apply here. 

Lastly, Yvonne asserts that the marital estate was entitled to be reimbursed in the amount of $7,523, which represents the amount of interest earned from the Stein Roe account and the cash allegedly given to Richard's mother.  We disagree. 

Regarding the interest on the Stein Roe account, Yvonne testified: 

"The amount of money that has been earned in that [Stein Roe] account, the equivalent, has been given to his mother.  Let me reiterate.  The account is paid twice -- interest is paid on the account twice a year, and what we would do is look at the statement, and whatever that monies were; for example, if it would be equivalent to $1,000 a year, I would take cash out of our joint checking account and give the equivalent in cash to his mother so that the monies that the account was earning would remain in the account, but the equivalent would be given to his mother -- Rick's mother."  

On the same topic, Yvonne also testified: 

"Well I would cash a check -- we'd make a check out to cash, and I would cash it, and then I would put the monies in an envelope, and he would bring it to his mother when we'd go to Florida -- down to Florida.  

*** 

Once a year.  I would collect the monies twice a year, and if we'd see her twice a year, she'd get it twice a year.  If not, I would give it to her in a lump sum once a year."  

Richard's testimony regarding this issue was as follows: 

"Q.  And since 1989, you have written checks off your joint account to your mother for funds earned in this account, is that not correct, Doctor? 

A.  Incorrect. 

Q.  Well, Doctor, in the year 1989, did you not write her two checks, one for $379.01 and one for $603.04? 

A.  Did I write them?  No, I don't recall writing checks. 

Q.  But your wife wrote them, cashed the checks, and gave your mother cash, didn't she? 

A.  Not that I know of. 

Q.  And, Doctor -- you don't know that? 

A.  No. 

Q.  That wasn't at your instruction? 

A.  Pardon? 

Q.  That wasn't at your instruction? 

A.  No.  If she cashed checks in those amounts, I don't -- I'd like to know where the cash went. 

***

Q.  And you never talked to your wife and talked to her to do this, Doctor? 

A.  No." 

In her 2 1/2 pages of testimony, June Steinberg provided no insight into the cash equivalent of the interest earned in the Stein Roe account.  June Steinberg was not asked about the issue by either counsel. 

In light of the conflicting testimony of Yvonne and Richard, and the nonexistent testimony of June Steinberg on this issue, we find that the record does not support reimbursement from the alleged cash given to Richard's mother in amounts equivalent to the interest earned from the Stein Roe account. 

For all of the foregoing reasons, we find no abuse of discretion by the trial court and affirm the judgment. 

Affirmed. 

CAMPBELL, P.J., and QUINN, J., concur.  

FOOTNOTES
1:
Yvonne's calculation of the amount in the accounts receivable at the time of the marriage apparently derives from Richard's testimony that his accounts receivable amounted to $125,000 and the collection rate ranged from 75% to 80%.  Taking 75% of $125,000 is $93,750.