**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 220296-U

Order filed September 26, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| | ) | of the 13th Judicial Circuit, |
| STEVE PHALEN, | ) | La Salle County, Illinois, |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | Appeal No. 3-22-0296 |
| and | ) | Circuit No. 19-D-26 |
| | ) | |
| HOLLY L. PHALEN, | ) | Honorable |
| | ) | Michelle A. Vescogni, |
| Respondent-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE ALBRECHT delivered the judgment of the court.
Justices BRENNAN and DAVENPORT concurred in the judgment.

_____

**ORDER**

¶ 1      *Held*:  The circuit court's classification of the parties' disputed assets as marital property was not against the manifest weight of the evidence, and its award of certain marital assets to respondent was not an abuse of discretion.

¶ 2      Petitioner, Steve Phalen, filed for dissolution of his marriage to respondent, Holly L. Phalen, in 2019. Following a bench trial, the circuit court requested the parties submit position papers and a stipulation regarding their disputed assets. In 2022, the court entered a judgment dissolving the parties' marriage and apportioning their marital property. On appeal, Steve argues

the court erred in its division by misclassifying certain assets as marital and awarding Holly the parties' fifth wheel camper. We affirm the judgment of the circuit court.

¶ 3                                    I. BACKGROUND

¶ 4        Steve and Holly married on January 1, 2010, in Los Angeles County, California. The marriage lasted for nine years before Steve petitioned for dissolution on January 18, 2019. The parties separated in September 2018, and there were no children born of the marriage. Holly's children from a prior relationship resided with the parties throughout their marriage. During and subsequent to the marriage, Steve worked at Phalen Steel Construction Company, a company that his family owned throughout the early years of the parties' marriage and later sold prior to dissolution. Holly worked in the human resources department at Walmart.

¶ 5        The case proceeded to a bench trial on November 23, 2020. The lion's share of testimony presented centered around the parties' differing opinions on the appropriate characterization and division of their assets. Central to this dispute, Steve testified that he kept several separate financial accounts, including an escrow maintained by his attorney and a checking account into which he deposited residual checks from an ownership interest in a company that predated his marriage. The escrow account his attorney maintained was comprised of the proceeds from the sale of Phalen Steel Construction Company, in which he held part ownership interest by gift. He owned two boats, one of which was a Crestliner fishing boat that he purchased with funds from the escrow account in 2018. As with all disputed assets purchased from his escrow account, Steve identified the Crestliner boat as nonmarital. He also testified that he purchased a Jayco travel trailer with $28,000 from the escrow account in July 2020.

¶ 6        Steve testified that the parties owned four dogs: two territorial male chows and a male and female German shepherd. The parties purchased the shepherds together from a shelter in

Texas, and named the male Herc and the female Storm. Steve's testimony indicated the shepherds were born from the same litter. Holly testified that all four dogs were mutually owned.

¶ 7    The parties also purchased a fifth wheel camper together. To do so, Holly testified that the parties ventured to Ohio, picked out the camper together, and made the downpayment with funds from a mutually owned account. The parties used the camper for approximately one year before Steve paid off the outstanding balance on the vehicle in one lump sum payment. When the court asked how much it cost to pay off the fifth wheel camper, Steve responded that he believed the balance of the loan was "probably [$]79,000 or $74,000." When the court noted that a check for that amount was not introduced into the record, Steve replied "[n]o, it would not be in that amount," further adding that his process of paying for assets from his escrow included using his escrow checks to get cashier's checks in specific amounts to then pay for items.

¶ 8    Once the parties separated, Holly and her daughter continued to live in a home located in Mendota, Illinois, a residence that Steve purchased before the marriage. Steve, meanwhile, relocated to a home in Streator, Illinois, which he purchased with funds he withdrew from his escrow account in June 2020.

¶ 9    After the trial's conclusion, the court ordered the parties to prepare and submit position papers. Holly's position paper argued that the parties' four dogs, Streator home, Crestliner boat, and Jayco trailer were purchased during the marriage and should be characterized as marital property. Steve's position paper conversely stated the Crestliner boat was purchased from his escrow account and was therefore nonmarital. He asserted the fifth wheel trailer was nonmarital on the same grounds. He also advocated for an award of the male German shepherd. Steve's position paper did not address the Jayco trailer or the Streator home; Holly's position paper did not address the fifth wheel camper.

3

¶ 10        Pursuant to the court's request, on April 13, 2021, the parties filed a stipulation regarding the fifth wheel camper that confirmed the parties placed a $1000 downpayment on the camper, Steve made monthly payments on it from a personal account, and the camper was exclusively titled to Steve.

¶ 11        On February 8, 2022, the court entered a judgment of dissolution of marriage with opinion and order dissolving the marriage of the parties. The court expressed frustration at the parties' position papers because many of the assets listed by the respective parties did not overlap, resulting in some of the parties' assets going unaccounted for. Nonetheless, with due consideration to the statutory factors outlined in section 503 of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/503(a), (d) (West 2022)), the court "did its very best in attempting to identify and classify marital and non-marital assets and in fashioning an equitable division of property, given the little evidence the Court received as to classification and valuation." Relevant to this appeal, the court classified the parties' fifth wheel camper, Jayco trailer, Crestliner boat, and Streator home as marital property.

¶ 12        Among other marital vehicles, the court awarded Steve the Crestliner boat. It also awarded him the Streator home. The court awarded Holly the Jayco trailer and fifth wheel camper, among other marital vehicles and vehicle accessories. Before awarding the fifth wheel camper, the court requested supplemental information via a stipulation of further evidence as it felt the trial and record produced insufficient evidence to support Steve's argument that the camper was nonmarital property. Based upon the stipulation of the parties, the court found that Steve failed to overcome the presumption that the trailer was marital property. Finally, the court divided the dogs equally among the parties, awarding Steve the two chows and Holly the two German shepherds.

¶ 13        Steve filed a motion to reconsider the court's order on March 8, 2022, wherein he argued that the equitable division of the parties' dogs should have resulted in his award of Herc. He also argued that certain assets characterized by the order as marital property were, in fact, nonmarital property because they were purchased through his escrow account. Specifically, he argued the Jayco trailer and fifth wheel camper fell into this category.

¶ 14        However, at argument on June 23, 2022, the court and Steve's counsel had the following colloquy with respect to the Jayco trailer:

"THE COURT: *** you just argued regarding the Jayco trailer, and it's in your motion to reconsider so is it now your position that you agree with the Court's award regarding the Jayco trailer?

MR. LANNON [(Steve's Attorney)]: That is correct, Your Honor. We're only asking that the Court appreciate the fact that it is a nonmarital asset but it's awarded to her.

* * *

THE COURT: All right. So just to be clear just so the record is clear. With respect to the Jayco trailer you agree with the manner in which the Court awarded it but you disagree with the classification that I found it was marital?

MR. LANNON: That's correct, Your Honor."

¶ 15        On June 24, 2022, the court issued a written order denying the motion to reconsider. Steve timely appealed this ruling.

¶ 16                                         II. ANALYSIS

5

¶ 17　　　　On appeal, Steve first argues that the court mischaracterized the Crestliner boat and Streator home as marital property resulting in the malapportionment of the court's overall marital property division. Second, he asserts that the court used the incorrect statutory standard in awarding the parties' male German shepherd to Holly. Third, he contends that the court erred in both characterizing the Jayco trailer and fifth wheel camper as marital property and awarding those assets to Holly. Holly offers that the majority of these issues are waived based on Steve's failure to raise them in the lower court. Before reaching the merits of Steve's appellate arguments, we address the threshold waiver issue.

¶ 18　　　　　　　　　　　　　　　　A. Waiver

¶ 19　　　　Holly asserts that Steve waived the following issues based on his failure to timely object and include such issues within his motion to reconsider: (1) her award of Herc, the parties' male German shepherd, (2) the classification of the Crestliner boat as a marital asset, and (3) the classification of the Streator home as a marital asset. We agree.

¶ 20　　　　Similarly, Holly argues that Steve has waived the issue of the court's characterization of the fifth wheel camper and Jayco trailer as marital property. We are persuaded that Steve's trial counsel waived his argument regarding the Jayco trailer award. We do not believe, however, that Steve's sought award of the fifth wheel camper as an "equitable division of assets" in his motion to reconsider—utilizing relief language that is exclusively reserved for the division of *marital* assets—waives his argument that the camper itself was mischaracterized by the circuit court as a marital asset.

¶ 21　　　　It is axiomatic that an issue not presented to or considered by the circuit court cannot be raised for the first time on review. *Allstate Property & Casualty Insurance Co. v. Trujillo*, 2014 IL App (1st) 123419, ¶ 17. Typically, an issue is waived on appeal unless a timely objection is

made at trial and is specifically raised in a written posttrial motion. *In re Gibson-Terry & Terry*, 325 Ill. App. 3d 317, 324 (2001).

¶ 22                                1. Crestliner Boat and Streator Home

¶ 23        Steve does not dispute that the Crestliner boat and Streator home were properly awarded to him but suggests that their mischaracterization as marital property created an imbalance in the court's division of marital assets. However, Steve's failure to include this contention within his motion to reconsider or argue its merits otherwise before the circuit court are fatal and this issue is waived.

¶ 24                                          2. Herc

¶ 25        Next, Steve argues the court erred in using an equitable division standard and not considering the well-being of the parties' male German shepherd, Herc, as is now required under Section 503(n) of the Act when it awarded Holly both Herc and Storm. See 750 ILCS 5/503(n) (West 2022) (mandating the court consider the well-being of a companion animal when allocating ownership during dissolution if it finds the companion animal is a marital asset). Steve's attack on the court's use of an equitable division standard holds no merit. Foremost, the motion to reconsider advances that the division of the shepherds was inequitable and a "fair and *equitable division* \*\*\* would be to award one [shepherd] to each party." In short, Steve sought a different application of the standard he now attacks on appeal. More importantly, Steve failed to mention Herc's well-being at any point leading up to his appeal, instead placing his own interest in the dog as paramount. His trial counsel's distillation of his argument is indicative of this point, stating at the hearing on the motion to reconsider that "we feel that Herc was [Steve's] and ought to be awarded to him." As such, he has waived this issue.

¶ 26                                      3. Jayco Trailer

¶ 27 In requesting reconsideration of the Jayco trailer award, Steve's trial counsel conceded there was no issue with the court awarding it to Holly, but invited the court to take notice that it is a nonmarital asset. Taken *arguendo*, his trial counsel's request is inconsistent with the law of property division required by section 503 of the Act. 750 ILCS 5/503(d) ("the court *shall* assign each spouse's nonmarital property to that spouse" (emphasis added)). Stated differently, had the court found that the Jayco trailer is Steve's nonmarital asset, it would have been statutorily bound to award him the asset. On appeal, Steve contends that his trial counsel mistakenly conflated the Jayco trailer with another of the parties' disputed vehicles that the court classified as marital property. This argument, however, is not supported by the record. Such a contention is all the more suspect when his trial counsel reiterated his concession upon the court's request at the hearing on Steve's motion to reconsider. Therefore, Steve has also waived this issue.

¶ 28                    B. Classification of Fifth Wheel Camper as Marital Property

¶ 29 The sole controversy appropriately preserved for appeal concerns the characterization and award of the parties' fifth wheel camper.

¶ 30 As a general rule, in a marriage dissolution action, we do not reverse a circuit court's classification of property as marital or nonmarital unless the classification was against the manifest weight of the evidence. See *In re Marriage of Heroy*, 385 Ill. App. 3d 640, 669 (2008); *In re Marriage of Joynt*, 375 Ill. App. 3d 817, 819 (2007). "A decision is against the manifest weight of the evidence when the opposite conclusion is clearly evident or where it is unreasonable, arbitrary, and not based on the evidence." *Berger v. Berger*, 357 Ill. App. 3d 651, 660 (2005).

¶ 31 Section 503(b)(1) of the Act creates a rebuttable presumption that, for purposes of property distribution during dissolution, all property acquired after the marriage and before

8

dissolution is presumed to be marital property. *In re Marriage of Didier*, 318 Ill. App. 3d 253, 258 (2000); 750 ILCS 5/503(b)(1) (West 2022). This presumption may be rebutted by showing through clear and convincing evidence that property was acquired through a method listed in section 503(a) of the Act. *In re Marriage of Hagshenas*, 234 Ill. App. 3d 178, 186 (1992). One such method is to show that the property obtained after marriage was "acquired in exchange for property acquired by gift." *Id.*; 750 ILCS 5/503(a)(1) (West 2022).

¶ 32    A party fails to overcome the presumption that an asset is marital if he or she cannot trace the entire purchase price of the asset to a nonmarital source. See *In re Marriage of Hegge*, 285 Ill. App. 3d 138, 143 (1996). This applies even to property titled in only one party's name—a fact which bears little relevance to the classification of property as marital or nonmarital. *Id.*; 750 ILCS 5/503(b)(1) (West 2022).

¶ 33    Here, Steve testified that "[w]e bought [the fifth wheel camper] new," and it was purchased during the marriage. He nonetheless argued it was a nonmarital asset. Due to this incongruence, the court requested the parties submit a stipulation in an effort to discern whether the asset was marital or nonmarital. The stipulation revealed that the vehicle was obtained from a $1000 downpayment from the parties' joint account, Steve made monthly payments on the vehicle from his own account, he was the sole title owner of the vehicle, and on March 16, 2017, he paid off the remaining cash value of the vehicle. Holly testified that the parties picked out the camper together and used it for a year before Steve received his portion of the proceeds from the sale of Phalen Steel Construction Company, which he then used to pay off the remaining balance on the camper.

¶ 34    Based on the foregoing, we cannot say that the court erred in finding that Steve failed to demonstrate by clear and convincing evidence that the fifth wheel camper was nonmarital

9

property. The parties stipulated that the downpayment on the camper was from a joint account. Further, we know of no case that supports the position that marital property may become nonmarital through one of the joint owners' unilateral financial contributions. *Cf. In re Marriage of Leon*, 80 Ill. App. 3d 383, 385 (1980) (finding husband failed to overcome the presumption that the parties' home purchased during their marriage was marital property, despite initial downpayment coming from nonmarital funds, where subsequent mortgage payments were from joint accounts). Nor does Steve's position find support from the addition of section 503(a)(6.5) of the Act because the camper was not "acquired by a spouse by the sole use of non-marital property ***[.]" 750 ILCS 5/503(a)(6.5) (West 2022). In sum, the court's classification of the fifth wheel camper as marital property was not against the manifest weight of the evidence.

¶ 35                          C. Holly's Award of the Fifth Wheel Camper

¶ 36        Steve also argues that regardless of the court's classification of the fifth wheel camper, the court erred in awarding the asset to Holly. "We will not disturb a trial court's division of marital assets unless it has clearly abused its discretion." *In re Marriage of Thornley*, 361 Ill. App. 3d 1067, 1071 (2005). A circuit court abuses its discretion when no reasonable person would take the view adopted by the court. See *In re Marriage of Nelson*, 297 Ill. App. 3d 651, 658 (1998). In issuing its dissolution order, the court noted the opacity presented in the record as to the value and nature of the parties' assets. Following the stipulation of the parties, it found the fifth wheel camper was marital, and in the exercise of its judgment and in consideration of other asset division pursuant to section 503(d), the court awarded Holly the camper. 750 ILCS 5/503(d) (West 2022). Steve was apportioned his nonmarital property, which includes his nonmarital home, various investments, and an insurance policy. The court found that Steve's income exceeded Holly's. The court explicitly referenced its consideration of the marital and

10

nonmarital assets awarded to both parties in awarding the camper to Holly. The equitable division of property does not require mathematical equality, and based on its findings, we hold the court did not abuse its discretion in awarding Holly the fifth wheel camper. See *Joynt*, 375 Ill. App. 3d at 821.

¶ 37 Last, Steve argues in the alternative that he should be reimbursed for his nonmarital contribution to paying off the fifth wheel camper pursuant to section 503(c)(2)(A) of the Act, which provides:

"When one estate of property makes a contribution to another estate of property, the contributing estate shall be reimbursed from the estate receiving the contribution notwithstanding any transmutation. No such reimbursement shall be made with respect to a contribution that is not traceable by clear and convincing evidence or that was a gift. The court may provide for reimbursement out of the marital property to be divided or by imposing a lien against the non-marital property that received the contribution." 750 ILCS 5/503(c)(2)(A) (West 2022).

¶ 38 Under this subsection, reimbursement, if any, goes to an estate and not a spouse. See, *e.g.*, *In re Marriage of Steinberg*, 299 Ill. App. 3d 603, 610 (1998). A circuit court's failure to reimburse the marital estate is reviewed under an abuse of discretion standard. See *id.*

¶ 39 Steve directs our attention to a check found within the record that was made out to him from his escrow account, which he purports was used to pay off the remaining balance on the fifth wheel camper. As the circuit court aptly pointed out at trial, there is no apparent connection between the checks introduced into the record and Steve's testimony as to the amount he contributed via a lump sum payment to the camper. In short, the court did not abuse its discretion

11

in finding that Steve failed to meet his burden of producing clear and convincing evidence which traced his contribution to the asset. Accordingly, no reimbursement is warranted.

¶ 40                                    III. CONCLUSION

¶ 41           The judgment of the circuit court of La Salle County is affirmed.

¶ 42           Affirmed.