No. 3-06-0919

Filed August 16, 2007.

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2007

| | | |
|---|---|---|
| In re MARRIAGE OF | ) | Appeal from the Circuit Court |
| | ) | of the 10th Judicial Circuit, |
| THERESA A. JOYNT, | ) | Peoria County, Illinois, |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | No. 04-D-501 |
| v. | ) | |
| | ) | |
| MICHAEL J. JOYNT, | ) | Honorable |
| | ) | Stephen A. Kouri, |
| Respondent-Appellee. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE LYTTON delivered the opinion of the court:
_____


Plaintiff, Theresa Joynt, appeals the trial court's judgment dissolving her 12-year marriage to defendant, Michael Joynt. Theresa argues that the trial court erred in characterizing the retained earnings of a closely held corporation as non-marital property. Alternatively, she claims that the trial court's distribution of marital assets was inequitable. We affirm.

Theresa filed a petition for dissolution of marriage on August 20, 2004. At trial, the parties stipulated that Michael owned 41 shares of stock in Mississippi Value Stihl, Inc. (MVS), worth approximately $94,000 and that the stock was nonmarital property.

James Carey, an accountant for MVS, testified that the company was closely held and designated as a subchapter S corporation. Michael served as the company's president and owned

33% of the corporate stock. Michael's sister owned 19.4% of the stock, and Michael's father owned 47.6%. Carey testified that Michael's gross pay from the company, approximately $240,000 to $250,000 per year, was fair compensation in the industry. In 2004, Michael's total net income from the corporation after the payment of taxes was $162,545.

Carey stated that based on the company's balance sheet, the retained earnings of the business in 2004 were $3,750,929. Those earnings were held by MVS for future operating expenses. The company did not pay dividends to its stockholders from the retained earnings account. However, if the company chose to do so, it could pay retained earnings dividends through liquidation of the business or declaration of the corporate board of directors. Michael would not be able to receive a retained earnings dividend individually unless an equal dividend were paid to and agreed upon by a majority of the shareholders. Michael's 33% ownership in the corporation entitled him to one-third of the retained earnings. The estimated value of Michael's retained earnings ownership at the time of the trial was $1,250,309.

Carey further testified that Michael had a buyout contract with his father. The contract provided that, upon his father's death, Michael would become the majority stockholder of the company by purchasing his father's stock. At that time, as the majority shareholder, Michael would be able to determine distribution payments from the retained earnings without approval from the remaining shareholder.

2

Carey further testified that the retained earnings are not reported as an asset. He explained that the corporation's stock would be an asset and "then the stock has to be valued." If you wanted to value the company's stock at book value, "in essence your [sic] valuing the retained earnings." Carey stated that a company's book value is the assets minus the debts, which equals the stockholders' equity.

The trial court concluded that the retained earnings of the closely held corporation should be classified as nonmarital property. In so doing, the court emphasized "this is not to suggest that under no circumstances would retained earnings of a nonmarital interest in a subchapter S corporation be classified as marital." The court noted that Michael was the president of the company and that the value of the retained earnings account had increased significantly in recent years. However, in reaching its determination in this case, the court placed "considerable weight on the significant amount of cash distributed by the company to its officers over the last three years versus the amount it has retained, along with the evidence in its entirety on the issue of control."

In addition to the division of property, the trial court ordered Michael to pay temporary maintenance and child support, and awarded Teresa approximately 60% of the marital estate.

ANALYSIS

I.  Retained Earnings

On appeal, Theresa contends that the trial court erred in

3

failing to classify Michael's interest in the retained earnings account of the closely held corporation as marital property.

Generally, we will not disturb a court's determination that an asset is nonmarital unless that finding is against the manifest weight of the evidence. In re Marriage of Hegge, 285 Ill. App. 3d 138 (1996). However, that standard of review is based on the presumption that determining whether an asset is marital involves weighing the credibility of the witnesses. In re Marriage of Werries, 247 Ill. App. 3d 639 (1993). In this case, the parties have asked us to rule on the legal effect of certain facts. Those facts are not in dispute, and the witnesses' credibility is not an issue. Accordingly, our review is de novo. In re Marriage of Peters, 326 Ill. App. 3d 364 (2001).

Whether retained earnings should be classified as marital property is an issue of first impression in Illinois. As noted by both parties, however, other states have generally held that retained earnings are nonmarital. Those jurisdictions have reached that conclusion based on the evaluation of two primary factors: (1) the nature and extent of the stock holdings, i.e., is a majority of the stock held by a single shareholder spouse with the power to distribute the retained earnings; and (2) to what extent are retained earnings considered in the value of the corporation. See 1 H. Gitlin, Gitlin on Divorce §8-13(j), at 8-172.2 (3rd ed. 2007)

In Allen v. Allen, 607 S.E.2d 331 (N.C.App. 2005), the court concluded that the retained earnings in a subchapter S corporation in which the husband was a 25% shareholder was properly

4

characterized as a nonmarital asset where the earnings were a component of the book value of the corporation. In In re Marriage of Robert, 652 N.W.2d 537 (Minn. App. 2002), the court ruled that the wife's interest in a subchapter S corporation's retained earnings account was not a marital asset since the wife was a minority shareholder who did not have authority to distribute the earnings to herself or other shareholders and earnings were not attributable to her entrepreneurial efforts during the marriage.

Other jurisdictions have also classified retained earnings accounts as nonmarital. See Swope v. Swope, 834 P.2d 298 (Idaho 1992) (marital estate has no interest in retained earnings of corporation, the stock of which is held as separate property, unless the spouse stockholder has sufficient control of the corporation to be able to cause the earnings to be retained); In re Marriage of Hoffmann, 676 S.W.2d 817 (Mo. 1984) (retained earnings of closely held corporation in which husband's ownership interest was 35% did not constitute marital property).

On the other hand, when a shareholder spouse has a majority of stock or otherwise has substantial influence over the decision to retain the net earnings or to disburse them in the form of cash dividends, courts have held that retained earnings are marital property. In Metz-Keener v. Keener, 573 N.W.2d 865 (Wis. 1997), the court determined that the retained earnings fund of a corporation inherited by the wife was income separate from the corporation and should be included in the marital estate. The court reached that conclusion because the wife had "full ownership

5

and possession of all the corporate shares and that she [was] the sole managing force behind the corporation." Metz-Keener, 573 N.W.2d at 869; see also Heineman v. Heineman, 768 S.W.2d 130 (Mo. App. W.D. 1989) (retained earnings account in wife's previously unincorporated art studio corporation was marital property because wife was sole shareholder and earnings were retained in lieu of salary). Thus, if the shareholder spouse controls the corporate distribution, the retained earnings are marital property.

Here, MVS's retained earnings are nonmarital. The company's stock was held in unequal shares by three individuals. Michael possessed only a minority percentage of those shares and was not a controlling shareholder. As only one of three board members, he could not have unilaterally declared or withheld dividends.

Although Teresa acknowledges the opposing authority, she maintains that the retained earnings should be classified as a marital asset because they are not corporate assets but rather income available to the shareholder.

A subchapter S corporation is a pass-through entity utilized for federal tax purposes. See Metz, 573 N.W.2d 865. Unlike a subchapter C corporation, MVS does not pay corporate-level taxes on its income. Instead, the corporation's income is taxed directly to its shareholders based on their ownership of corporate stock, whether or not the income is actually distributed to the shareholders. See I.R.C. §§1361-1379 (2000) (defining and explaining subchapter S and subchapter C corporations). A subchapter S corporation monitors its retained corporate earnings

6

using an account which is then used to determine each shareholder's basis for taxed but undistributed corporate income. However, retained earnings and profits of a subchapter S corporation are a corporate asset and remain the corporation's property until severed from the other corporate assets and distributed as dividends. See Robert, 652 N.W.2d at 543; Hoffmann, 676 S.W.2d at 827.

In this case, the retained earnings were part of the corporate assets. The expert witness testified that the earnings were held by the corporation to pay expenses. Although, under the pass-through provisions for subchapter S corporations, these undistributed earnings were taxed to Michael and Teresa as "income" on their individual income tax return, MVS paid the tax through year-end designated payments made to Michael. Further, as the president of the company, Michael received a salary, plus biannual bonuses, as compensation for managing the daily operations. The only expert testimony found in the record indicates that Michael's compensation during the marriage was reasonable and fair for the services he provided.

While the trial court expressed its concern that MVS's retained earnings account may have been used to "shelter" marital income, the court found insufficient evidence to support that conclusion. See Speer v. Quinlan, 525 P.2d 314 (Idaho 1974) (although shareholder spouse was president of closely held corporation, no evidence that corporate earnings were retained to defraud marital estate). We agree with the trial court's assessment of the record.

7

Because, Michael was unable to authorize a payment of the retained earnings as a dividend without shareholder approval and because the earnings were a corporate asset, we hold that the retained earnings account of the corporation is a nonmarital asset.

## II.  Division of Marital Assets

Alternatively, Theresa claims that the trial court abused its discretion in its division of marital assets.

The touchstone of whether apportionment of marital property was proper is whether it is equitable in nature; each case resting on its own facts.  In re Marriage of Scoville, 233 Ill. App. 3d 746 (1992).  An equitable division of property does not require mathematical equality.  In re Marriage of Gentry, 188 Ill. App. 3d 372 (1989).  Section 503 of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/101 et seq. 2004)) lists certain factors to consider, including: (1) the value of the property assigned to each spouse; (2) the duration of the marriage; (3) the relevant economic circumstances of each spouse; (4) the age, health, station and occupation of each spouse; (5) the custodial provision for any children; and (6) the reasonable opportunity of each spouse for future acquisition of capital assets and income. 750 ILCS 5/503(d) (West 2004).  Absent an abuse of discretion, this court will not disturb the trial court's distribution of assets. In re Marriage of Kerber, 215 Ill. App. 3d 248 (1991).

The court specifically considered Michael's ownership of substantial nonmarital assets and made its award of marital property at 60% to Theresa and 40% to Michael.  In addition to the

8

division of marital property, the trial court also awarded Teresa temporary maintenance, required Michael to maintain medical insurance coverage for her and the children, and ordered Michael to pay 75% of her uncovered medical expenses and 90% of the uncovered health related expenses for the children. The court adequately considered all the factors of section 503(d) in making its distribution of marital property, including the value of the nonmarital assets, Theresa's health, and her relative inability to acquire capital assets and income. In light of these factors, we find that the court did not abuse its discretion in awarding Theresa 60% of the marital estate.

## CONCLUSION

The judgment of the circuit court of Peoria County is affirmed.

Affirmed.

CARTER and SCHMIDT, JJ., concurring.

9