FIFTH DIVISION
November 25, 2009

No. 1-08-3541

| | | |
|---|---|---|
| *In re* MARRIAGE OF: | ) | Appeal from the |
| DANIEL W. LUNDAHL, | ) | Circuit Court of |
| | ) | Cook County |
| Petitioner-Appellant, | ) | |
| | ) | |
| and | ) | No. 06 D3 30268 |
| | ) | |
| SUSAN LUNDAHL, | ) | The Honorable |
| n/k/a Susan Hopper, | ) | Samuel Betar, III, |
| | ) | Judge Presiding. |
| Respondent-Appellee. | ) | |

JUSTICE FITZGERALD SMITH delivered the opinion of the court:

This action was for dissolution of marriage. The trial court granted the parties, Daniel W. Lundahl (Lundahl) and Susan Hopper (Hopper), a dissolution of their marriage and awarded Hopper 100% of her nonmarital assets and 100% of the marital assets, while awarding Lundahl 100% of his nonmarital assets. Thereafter, both parties filed motions to reconsider, and the trial court subsequently reclassified the retained earnings of Lundahl's company from nonmarital property to marital property. Lundahl filed a motion to reconsider, which was denied. Lundahl now appeals arguing that (1) the trial court's original classification of his retained earning as nonmarital property was correct, (2) the amount of retained earnings found was incorrect, and (3) the trial court erred in awarding attorney fees to Hopper. For the following reasons, we affirm in part and remand for further proceedings in accordance with this Opinion.

I. BACKGROUND

Lundahl and Hopper met in early 2004 and were married on July 3, 2004. At the time of

their marriage, Lundahl owned two businesses: APS Corporation USA and American Internet Services Network Corporation (AIS). Lundahl was the sole shareholder of each corporation, and each corporation was taxed as a subchapter S corporation for federal income tax purposes. The parties were married for approximately two years.

During the marriage, APS Corporation USA reported no income for the calendar years of 2004 and 2005, and it conducted no business in those years. AIS, on the other hand, produced income, which was reported on Lundahl and Hopper's joint income tax return for the calendar year of 2004 in the amount of $139,688. On Lundahl's individual income tax return for the calendar year of 2005, AIS produced $260,754.

Lundahl was paid a salary by AIS in the amount of $52,047 in 2004, $50,962 in 2005, and approximately $50,000 in 2006. In addition, Lundahl took disbursements from AIS's earnings and assets in the amount of $147,000 in 2004, $218,500 in 2005, and $411,500 in 2006. All of Lundahl's salary and disbursements were deposited into the parties' joint checking account, or were used to pay the parties' taxes.

During the parties' marriage, Hopper began working outside the marital home in August of 2005. For three months of the marriage, she deposited $1,000 each month from her employment income into the parties' joint checking account. Other than that, she maintained her own bank account, into which she deposited her own wages. Lundahl did not have access to such account.

Lundahl filed his petition for dissolution of marriage in March of 2006. Hopper filed a counterpetition for dissolution of marriage on July 18, 2006. Prior to trial, Lundahl was granted

exclusive possession of the marital residence, which was his nonmarital property. Hopper was provided $4,000 per month for temporary maintenance from August 2006 through the date of the trial court's memorandum opinion and judgment for dissolution of marriage on April 24, 2007.

In its memorandum opinion and judgment for dissolution of marriage, the trial court found that the testimony of Hopper was neither credible nor reasonable, but that testimony of Lundahl was both credible and reasonable. The trial court classified the parties' assets and awarded Hopper 100% of the marital assets, and 100% of her nonmarital assets. The trial court awarded Lundahl 100% of his nonmarital assets, which included his retained earnings from AIS.

In its reasoning, the trial court noted that the statue which governs marital property (750 ILCS 5/503(a) (West 2006)), states in pertinent part, "'marital property' means all property acquired by either spouse." The trial court found that this definition focused on which spouse, if any received the retained earnings. The trial court noted that in the instant case, neither party acquired the retained earnings because the earnings were the property of AIS and were located in AIS's corporate account. Because the parties agreed that AIS was Lundahl's nonmarital asset, the trial court found that the retained earnings constituted nonmarital property.

Thereafter, both parties filed motions to reconsider the trial court's decision. Prior to ruling on the parties' posttrial motions, the Third District of the Illinois Appellate Court issued a relevant case, titled In re Marriage of Joynt, 375 Ill. App. 3d 817 (2007). The trial court requested that the parties brief the issue of classification of retained earnings in light of Joynt.

On December 10, 2007, the trial court issued its judgment order reclassifying the retained earnings from AIS as marital property. The trial court determined that the retained earnings

amounted to $730,000. Hopper was awarded $305,900, which represented 40% of the marital estate. In its reasoning, the trial court applied Joynt and found that because Lundahl was the sole shareholder, officer, and director of AIS, and because he had sole discretion over how much of the retained earnings should be distributed to him, the retained earnings were marital property. The trial court further relied on the fact that AIS was a successful entity solely through his efforts, his expertise, and his marketing abilities.

Hopper's attorney, Michael Kalcheim, filed his petition for interim fees and costs on February 6, 2008. After hearing arguments from both parties and after reviewing billing invoices, the trial court awarded Kalcheim $14,500 for fees and costs. Lundahl now appeals.

## II. ANALYSIS

On appeal, Lundahl argues that (1) the trial court's original decision classifying AIS's retained earnings as his nonmarital property was correct, (2) the amount of retained earnings found by the trial court was incorrect, and (3) the trial court erred when it awarded Hopper attorney fees.

### A. Classification of a Subchapter S Corporation's Retained Earnings

Lundahl's first contention on appeal is that the trial court erred in finding that the retained earnings of AIS constituted marital property. Lundahl relies on section 503 of the Illinois Marriage and Dissolution of Marriage Act (the Act) (750 ILCS 5/503 (West 2006)) to support his position and urges this court not to follow the recent decision of Joynt. Hopper, on the other hand, maintains that according to Joynt, retained earnings of a subchapter S corporation constitute income, and because such income was attributable to Lundahl's personal efforts, such

earnings were marital property. We begin by looking at the statute, which states in pertinent part:

"(a) For purposes of this Act, 'marital property' means all property acquired by either spouse subsequent to the marriage, except the following, which is known as 'non-marital property':

\* \* \*

(6) property acquired before the marriage;

(7) the increase in value of property acquired by a method listed in paragraphs (1) through (6) of this subsection, irrespective of whether the increase results from a contribution of marital property, non-marital property, the personal effort of a spouse, or otherwise, subject to the right of reimbursement provided in subsection (c) of this Section; and

(8) income from property acquired by a method listed in paragraphs (1) through (7) of this subsection if the income is not attributable to the personal effort of a spouse.

\* \* \*

(c) Commingled marital and non-marital property shall be treated in the following manner, unless otherwise agreed by the spouses:

\*\*\*

(2) \*\*\* when a spouse contributes personal effort to non-marital property, the contributing estate shall be reimbursed from

the estate receiving the contribution notwithstanding any transmutation. *** Personal effort of a spouse shall be deemed a contribution by the marital estate." 750 ILCS 5/503 (West 2006).

In the trial court, Hopper argued that section 503(a)(8) applied in this case because the retained earnings constituted income, and that because such income was attributable to Lundahl's personal efforts, that income must therefore be classified as marital property. The trial court found that Hopper misconstrued section 503. It noted that if the retained earnings belonged to AIS, they would be Lundahl's nonmarital property via his stock ownership in AIS. On the other hand, if the retained earnings belonged to Lundahl personally, they would be marital property subject to division. The trial court reiterated that marital property means all property acquired by either spouse, and then noted that here, neither spouse received the retained earnings. Accordingly, the trial court found that the retained earnings were the property of AIS and located in AIS's corporate account and were therefore Lundahl's nonmarital property.

Additionally, the court found that Hopper had completely ignored sections 503(a)(7) and 503(c)(2) of the Act, which provide for the possible reimbursement to the marital estate for a spouse's personal efforts that increase the value and retained earnings of property. The trial court noted that Hopper's argument would render sections 503(a)(7) and 503(c)(2) meaningless because she defined AIS's retained earnings as marital property simply because Lundahl's personal efforts increased the value of the retained earnings. The trial court stated, "[i]f this were the correct definition of marital property, 'reimbursement' of the marital estate under 503(a)(7) and 503(c)(2) would be unnecessary in every case and there would be no need for the inclusion

6

of 503(a)(7) and 503(c)(2) in the 503 statute." The trial court found that looking at the Act as a whole, and recognizing the common rule of law that it is not appropriate to construe a statute in such a way as to render some of its parts meaningless, AIS's retained earnings constituted Lundahl's nonmarital property.

After the parties filed motions to reconsider, the Joynt case was issued by the Third District of the Illinois Appellate Court. In Joynt, the husband, Michael, owned 41 shares of stock in Mississippi Value Stihl, Inc. (MVS). Joynt, 375 Ill. App. 3d at 818. MVS was a closely held business designated as a subchapter S corporation. Michael served as the company's president and owned 33% of the corporate stock. Joynt, 375 Ill. App. 3d at 818. The retained earnings of MVS in 2004 were $3,750,929 and were held by MVS for "future operating expenses." Joynt, 375 Ill. App. 3d at 818. MVS did not pay dividends to its stockholders from the retained earnings account. However, if the company so chose, it could pay retained earnings dividends through liquidations of the business or a declaration of the corporate board of directors. Joynt, 375 Ill. App. 3d at 818. Michael was unable to receive a retained earnings dividend individually unless an equal dividend was paid to and agreed upon by a majority of the shareholders. Michael's 33% ownership in the corporation entitled him to one-third of the retained earnings. Joynt, 375 Ill. App. 3d at 818. The trial court found that in this case, the retained earnings were nonmarital property, but noted that "'this is not to suggest that under no circumstances would retained earnings of a nomarital interest in a subchapter S corporation be classified as marital.'" Joynt, 375 Ill. App. 3d at 818. On appeal, Michael's wife contended that the trial court erred in failing to classify Michael's interest in the retained earnings as marital property.

7

The Third District noted that other jurisdictions have generally held that retained earnings are nonmarital based on the evaluation of two primary factors: "(1) the nature and extent of the stock holdings, *i.e.*, is a majority fo the stock held by a single shareholder spouse with the power to distributed the retained earnings; and (2) to what extend are retained earnings considered in the value of the corporation." Joynt, 375 Ill. App. 3d at 819. The court, relying in part on Metz v. Keener, 215 Wis. 2d 626, 573 N.W.2d 865 (1997), noted that "when a shareholder spouse has a majority of stock or otherwise has a substantial influence over the decision to retain the net earnings or to disburse them in the form of cash dividends, courts have held that retained earnings are marital property." Joynt, 375 Ill. App. 3d at 820. The Joynt court stated that in Metz, the court found that retained earnings fund of a corporation inherited by the wife was income separate from the corporation and could be included in the marital estate because the wife had "'full ownership and possession of all the corporate shares and that she [was] the sole managing force behind the corporation.'" Joynt, 375 Ill. App. 3d at 820, quoting Metz, 215 Wis. 2d at 634, 573 N.W.2d at 869. The Joynt court therefore concluded that "if the shareholder spouse controls the corporate distribution, the retained earnings are marital property." Joynt, 375 Ill. App. 3d at 820.

Based in part on such propositions, the Joynt court found that MVS's retained earnings were nonmarital because the company's stock was held in three unequal shares by three individuals; Michael possessed only a minority percentage of those shares and was not a controlling shareholder; and as one of three board members, he could not have unilaterally declared or withheld dividends. Joynt, 375 Ill. App. 3d at 820.

The wife in Joynt, however, went on to argue that the retained earnings should be classified as a marital asset because they were not corporate assets but rather income available to the shareholder. The court found that the retained earnings were part of the corporate assets and were held by the corporation to pay expenses. The court noted that although the undistributed earnings were taxed to Michael and his wife as their "income" on their individual income tax returns, MVS paid the tax through year-end designated payments made to Michael. Finally, the court concluded, "[b]ecause Michael was unable to authorize a payment of the retained earnings as a dividend without shareholder approval and because the earnings were a corporate asset, we hold that the retained earnings account of the corporation is a nonmarital asset." Joynt, 375 Ill. App. 3d at 821.

Based upon the above law set out in Joynt, the trial court in the case at bar reclassified AIS's retained earnings as marital property. The court noted that while the Joynt decision was "not directly applicable to this case, as the facts herein differ from the facts presented in Joynt," because Lundahl was a sole shareholder, sole officer, and sole director of AIS; had sole discretion over how much of the retained earnings should be distributed to him; and that the corporation was a successful entity "solely through his efforts, and his expertise, and his marketing abilities," the retained earnings of AIS constituted marital property.

Lundahl now appeals arguing that the Joynt court's reliance on other jurisdictions was misplaced, and that the trial court's original ruling, whereupon it relied on the Act rather than Joynt, was correct.

We first note that a trial court's classification of property will not be disturbed on appeal

9

unless it is contrary to the manifest weight of the evidence. In re Marriage of Jelineck, 244 Ill. App. 3d 496, 503 (1993). The disposition of property is governed by section 503 of the Act. Jelineck, 244 Ill. App. 3d at 503.

Lundahl argues that the Act, combined with Illinois case law precedent, reveals that AIS's retained earnings should have been classified as nonmarital property. Lundahl first points to a string of cases which holds that a business property interest owned by one spouse prior to the parties' marriage is nonmarital property and retains its nonmarital classification despite a significant increase in its value attributable to personal efforts of a spouse; and that if the husband makes a reasonable salary during the marriage, the marital estate is not entitled to reimbursement. See In re Marriage of Kennedy, 94 Ill. App. 3d 537 (1981) (music stores owned by husband prior to marriage were his nonmarital property and increase in value of those nonmarital businesses was also his nonmarital property); In re Marriage of Kamp, 199 Ill. App. 3d 1080 (1990) (finding that the Act leaves no doubt but that a business property interest owned by one spouse prior to the parties' marriage is nonmarital property and retains its nonmarital classification despite a significant increase in its value during marriage); In re Marriage of Landfield, 209 Ill. App. 3d 678 (1991) (a business property interest owned by one spouse prior to the parties' marriage is nonmarital and retains its nonmarital classification despite a significant increase in its value during marriage, and if a contributing spouse's salary is found to be reasonable for the efforts contributed, the nomarital business need not reimburse the marital estate because the contributing spouse's salary during marriage is marital property and thus the marital estate has already been compensated); In re Marriage of Perlmutter, 225 Ill. App. 3d 362

10

(1992) (if husband's salary is found to be a reasonable compensation for his efforts, the nonmarital business need not reimburse the marital estate because husband's salary during marriage is marital property); In re Marriage of Steinberg, 299 Ill. App. 3d 603 (1998) (marital estate not entitled to reimbursement from the accounts receivable of a nonmarital corporation because the annual income received by the husband during the course of the marriage adequately compensated the marital estate).

Lundahl argues, based on the above-cited cases and section 503(a)(7) of the Act (750 ILCS 5/503(a)(7) (West 2006)), that because AIS was acquired before his marriage to Hopper, despite its increase in value due to his personal efforts, the retained earnings of the corporation remained nonmarital as part of AIS's property. Hopper argues, however, relying on Joynt, that the retained earnings constituted Lundahl's income. She further notes, relying on section 503(a)(8) of the Act rather than section 503(a)(7), that income from previously acquired property becomes marital if it is a result of a spouse's personal efforts. 750 ILCS 5/503(a)(8) (West 2006). Thus, Hopper maintains that because AIS's retained earnings were attributable to Lundahl's personal efforts, the retained earnings were marital. We agree with Hopper.

As the Third District noted in Joynt, other states have generally held that retained earnings are nonmarital by evaluating two primary factors: "(1) the nature and extent of the stock holdings, *i.e.*, is a majority of the stock held by a single shareholder spouse with the power to distribute the retained earnings; and (2) to what extent are retained earnings considered in the value of the corporation." Joynt, 375 Ill. App. 3d at 819. Contrary to the parties' interpretation of the case, we do not believe that the Joynt court has set forth a "two-part" test. Rather, the

11

Third District acknowledged that these were two primary factors that other jurisdictions relied upon. Some jurisdictions, as Lundahl noted, relied on only one of those two factors. Nonetheless, we will evaluate both factors in light of the facts of the case at bar.

In Joynt, the court found that MVS's retained earnings were nonmarital because the company's stock was held in unequal shares by three individuals; Michael possessed only a minority percentage of those shares and was not a controlling shareholder, and as only one of three board members, he could not have unilaterally declared or withheld dividends. Joynt, 375 Ill. App. 3d at 820. Contrarily in this case, Lundahl wholly owned AIS, was the sole shareholder of AIS, and could have unilaterally declared or withheld dividends. In fact, Lundahl unilaterally took disbursements from AIS's retained earnings in the amount of $147,000 in 2004, $218,000 in 2005, and $411,500 in 2006 without requiring approval from anyone else. Accordingly, we find that the retained earnings were not in fact an asset of the corporation but, rather, constituted Lundahl's income.

The Joynt court found that the retained earnings of MVS, the subchapter S corporation in question, were a corporate asset, and thus nonmarital. The court based this decision on the fact that the retained earnings were held by the corporation to pay expenses and the fact that although the retained earnings were taxed to the husband and wife as "income" on their individual income tax return, MVS paid the tax through year-end designed payments made to Michael. Joynt, 375 Ill. App. 3d at 821. Contrarily in the case at bar, the retained earnings of AIS were not held by the corporation to pay expenses. They were not used to pay dividends, nor were they used in connection with the corporation. Additionally, they were taxed to Lundahl who paid the income

tax on the earnings. Accordingly, we find that the retained earnings constituted Lundahl's income, rather than an asset of AIS. See Ramon v. Ramon, 963 A.2d 128, 133 (Del. 2008), quoting J.D.P. v. F.J.H., 399 A.2d 207, 216 n.1 (Del. 1979) (retained earnings are "'corporate net income which would be available for distribution as dividends, for payment of wages, salaries and bonus, and other proper corporate purposes'"; they are active earnings generated and retained during the marriage that add to the value of a premarital asset, in contrast to the passive increase in value of premarital earnings which is protected by the statute).

We therefore find that section 503(a)(8) of the Act applies. Section 503(a)(8) states that income from property acquired prior to marriage is nonmarital property if it is not attributable to the personal effort of a spouse. See 750 ILCS 5/503(a)(8) (West 2006). Lundahl was the sole owner and shareholder of AIS, and thus the income of AIS during the marriage was attributable to Lundahl, making such income marital property. Accordingly, pursuant to both Joynt and the statute, the retained earnings of AIS were properly classified as marital property by the trial court.

### B. Amount of Retained Earnings

Lundahl's next contention on appeal is that the trial court's valuation of the retained earnings in the amount of $730,000 was against the manifest weight of the evidence and the trial court's award to Hopper of 40 % of that amount was an abuse of discretion.

Section 503(d) of the Act states that the court shall divide marital property in "just proportions." 750 ILCS 5/503(d) (West 2006). The first step, therefore, is to establish the value of such assets. In re Marriage of Grunsten, 304 Ill. App. 3d 12, 17 (1999). Once a trial court has classified property as either marital or nonmarital, that decision will not be disturbed on appeal

unless it is contrary to the manifest weight of the evidence. In re Marriage of Jelinek, 244 Ill. App. 3d 496, 503 (1993). The manifest weight of the evidence standard is used when assigning value to an asset after classification because valuation of marital assets is generally a factual determination. In re Marriage of Hubbs, 363 Ill. App. 3d 696, 700 (2006). Both parties cite In re Marriage of Cutler, 334 Ill. App. 3d 731 (2002), in support of their positions.

In Cutler, the husband David was the only shareholder and principal of a closely held corporation. Cutler, 334 Ill. App. 3d at 736. The agency was a "captive agency" - which means it could not sell insurance other than that of its principal, Geico. Cutler, 334 Ill. App. 3d at 736. The experts who testified at trial applied two different methods of valuation and arrived at divergent values for the agency. The wife's expert used the market approach method and found the agency value to be $270,000. David's expert used the asset approach method and found the agency value to be $32,000. The trial court, however, rejected both opinions and found the value to be $243,000 based on a capitalized returns method - a form of the income approach method. Cutler, 334 Ill. App. 3d at 736. The only reference in the record to such amount was a passing statement made by the wife's expert when he indicated that after determining the value was $270,000 based on the market approach, he applied the capitalized returns analysis under which he found the value to be $243,000. Cutler, 334 Ill. App. 3d at 736. On appeal, the Cutler court found that the trial court's reliance on a single cursory reference to the value of the agency, absent any evidentiary basis for the determination, was against the manifest weight of the evidence. Cutler, 334 Ill. App. 3d at 737.

In the case at bar, no expert testimony was offered as to the value of the retained earnings.

14

In its first memorandum opinion, issued April 24, 2007, the trial court found that AIS had approximately $900,000 in retained earnings. After the parties both filed motions to reconsider the trial court's judgment on other grounds, the Joynt case was issued.

On September 24, 2007, Hopper filed a supplemental brief in reference to the applicability of In re Joynt. In the last paragraph of such brief Hopper stated that the "amount of retained earnings in dispute is approximately $730,000." She did not indicate from where she got such number. In his reply brief, Lundahl denied that the retained earnings were $730,000. Rather, he noted that the only evidence in the record relating to retained earnings was the corporate federal income tax returns for the years 2004 and 2005, which reflected that the retained earnings as of December 31, 2005, were $493,130.

Thereafter, on October 16, 2007, Lundahl filed a motion to reopen proofs. In his motion, Lundahl claimed that at the time of trial, the 2006 corporate tax returns were not available, but that they were currently available. Lundahl stated that if the trial court was going to reverse itself and find the retained earnings to be marital, it needed to have evidence of the amount of retained earnings. The trial court denied Lundahl's motion.

On November 19, 2007, Lundahl filed a motion to clarify the record, in which he stated that the trial court needed to accurately value the retained earnings and offered two different ways for the court to do so. The first option was for the trial court to use the Fidelity account records that were admitted at trial. Lundahl claims that such records reveal that the net profits of AIS, for the duration of the marriage, amounted to $913,620.25. Lundahl further claims that $685,000 was distributed to the marital estate during that time, leaving $228,620.25 to be

15

classified as retained earnings. The second option Lundahl proposed in his motion to clarify the record was for the trial court to use the 2006 corporate tax returns, which he requested to be admitted into evidence. Lundahl claimed that such tax return would show that the amount of the retained earnings was $338,046 as of December 31, 2006.

On December 10, 2007, the trial court entered its final judgment order. In finding that the retained earnings were income, the curt noted that it must redistribute the marital estate. It noted that "[a]t the time of trial, based on the evidence presented by both sides, the Court found that there were in excess of $900,000 in retained income and earnings. The Court will use the figure argued in [Hopper's] brief that the corrected amount of income and retained earnings was $730,000."

Lundahl now argues that such figure was against the manifest weight of the evidence because no evidence was presented to support the figure of $730,000. We agree. As in Cutler, we find that the trial court's reliance on a single cursory reference to the value of the agency, absent any evidentiary basis for the determination, was against the manifest weight of the evidence. See Cutler, 334 Ill. App. 3d at 737. Moreover, Hopper points to no evidence in her brief to support the figure of $730,000. Accordingly, we remand this cause to the trial court for a specific finding of the amount of retained earnings.

Lundahl also argues that Hopper's award of 40% of the marital estate was an abuse of the trial court's discretion. In its original judgment, the trial court awarded Hopper 100% of the marital estate, which consisted of various monies from bank accounts, a tax refund, and furniture. Upon the trial court's second and final judgment, the trial court reclassified the retained earnings

16

as marital property and then converted Hopper's award from 100% of the marital property to 40%, stating, "[a]fter careful review of the factors set forth in Section 750 ILCS 5/503(d) of the [Act], the Court awards [Hopper] forty percent (40%) of the marital estate and awards [Lundahl] sixty percent (60%) of the marital estate." Because we remand for a specific valuation of the retained earnings, which made up the majority of the marital estate, we remand for reconsideration of the distribution of the marital estate as well.

### C. Attorney Fees

Lundahl's final argument on appeal is that the trial court's award of Hopper's attorney fees was an abuse of discretion. Specifically, Lundahl contends that the trial court should have held an evidentiary hearing on Hopper's fee petition because he had raised numerous supported objections against a fee award showing that Hopper's attorney filed incorrect and irrelevant pleadings. Hopper responds that Lundahl did not object to the attorney fees and that the trial court did not abuse its discretion when it awarded Hopper attorney fees. We agree with Hopper.

A court's decision to award fees in a particular case "rests in the sound discretion of the trial court, and exercise thereof will not be interfered with unless such discretion is clearly abused." Gasperini v. Gaspirini, 57 Ill. App. 3d 578, 582 (1978). The amount of fees to be allowed in a divorce proceeding depends on the consideration of the relative financial abilities of the parties, the nature of the controversy, the question at issue, the significance or importance of the subject matter, the degree of responsibility involved, the standing or skill of the person employed, and the time and labor involved. Gasperini, 57 Ill. App. 3d at 582. "The allowance should be only in such amount as will compensate for the services rendered, and must be fair and

17

just to all parties concerned; namely, the attorney to be compensated, the client, and the person required to make the payment." Gasperini, 57 Ill. App. 3d at 582. "Furthermore, it should appear that the work being compensated for was reasonably required and necessary for the proper performance of the legal services in the case. Gasperini, 57 Ill. App. 3d at 582.

In this case, Hopper filed her petition for interim attorneys fees and costs incurred and for prospective attorney fees and costs, pursuant to 750 ILCS 5/501(c)(1) (West 2006), which states in pertinent part that "[e]xcept for good cause shown, a proceeding for (or relating to) interim attorney's fees and costs shall be nonevidentiary, summary in nature, and expeditious." The Act further states that in assessing an interim award, the court shall consider all relevant factors as presented, that appear reasonable and necessary, including: the income of each party, the needs of each party, the realist earning capacity of each party, any impairment to present earning capacity of either party, the standard of living established during the marriage, the degree of complexity of the issues, each party's access to relevant information, the amount of payments made or reasonably expected to be made to the attorney for the other party, and any other factor that the court finds to be just and equitable. See 750 ILCS 5/501(c)(1) (West 2006).

Lundahl then filed his response, citing several objections including that the rates charged by Hopper's counsel were in excess of reasonable and normal rates, and that Hopper failed to attach any supporting documentation reflecting the amount of attorney fees and costs.

On April 11, 2008, a hearing was held. Hopper's attorney noted that in an interim fee petition hearing, it was unnecessary to attach his billing invoices because the hearing is summary in nature. However, he did bring his invoices to court and the trial court took time to review

them. The trial court then asked Hopper's attorney several questions concerning the invoices and then stated, "All right. Anybody else have anything to say before I rule on the petition for interim fees?" Lundahl's attorney responded, "No, Judge." The trial court then stated that it had heard the argument of counsel and had read the various briefs and invoices. The trial court further stated that it had considered the factors set forth in sections 501 and 508 of the Act, and found that Hopper did not have the ability to pay and that Lundahl did have the ability to pay. The trial court found that the time expended and the hourly rates charged by Hopper's attorney were reasonable and necessary. The trial court awarded Hopper $14,500 in attorney fees.

Based on careful review of the record, we find that the trial court did not abuse its discretion in awarding Hopper attorney fees. The amount of fees were based on the consideration of the factors set forth in the statute, and the work being compensated for was reasonably required and necessary for the proper performance of legal services in this case. See Gaspirini, 57 Ill. App. 3d at 582. Accordingly, we find that the trial court did not abuse its discretion in awarding Hopper attorney fees in the amount of $14,500.

### III. CONCLUSION

For the foregoing reasons, we affirm in part the judgment of the circuit court of Cook County and remand for a finding of the specific amount of retained earnings, as well as a reconsideration of the distribution of the marital estate based on such finding.

Affirmed in part; cause remanded for further proceedings in accordance with this Opinion.

TOOMIN, P.J., and HOWSE, J., concur.

19