2020 IL App (1st) 192238-U

THIRD DIVISION
September 30, 2020

No. 1-19-2238

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF TRACY ADDUCI, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellee, | ) | Cook County. |
| | ) | |
| and | ) | No. 14 D 11246 |
| | ) | |
| ANTHONY ADDUCI, | ) | Honorable |
| | ) | Matthew Link, |
| Respondent-Appellant. | ) | Judge Presiding. |

_____

PRESIDING JUSTICE HOWSE delivered the judgment of the court.
Justices Ellis and Burke concurred in the judgment.

ORDER

¶ 1    *Held*:   We affirm the  judgment of the circuit court of Cook County which classified a checking account ostensibly used for business purposes as marital property because the judgment is not against the manifest weight of the evidence; respondent failed to overcome the presumption of marital property with clear and convincing evidence that the business used the account for business purposes and that respondent did not use the account for personal expenditures.

¶ 2    In December 2014 petitioner, Tracy Adduci, filed a petition for dissolution of marriage against respondent, Anthony Adduci.  In April 2019 the circuit court of Cook County entered a judgment for dissolution of marriage.  The judgment, in pertinent part, found an account in the name of Anthony's nonmarital business was, nonetheless, marital property.  Anthony filed a motion to reconsider.  In September 2019 the trial court denied Anthony's motion to reconsider. For the following reasons, we affirm.

¶ 3                                    BACKGROUND

¶ 4      The parties married in February 2005.  The relevant evidence from the trial was that Anthony testified he started CompAdvise when he was 15-years old and that it provides technology solutions to clients.  He testified "I provide hospitality technology consulting and advisory services, technology services, break, fix, repair, project work."  Anthony testified that he has to stay current in the technology field because it is always changing.  He testified doing that is "very capital-incentive (*sic*)" because he has to "buy servers and stay current with the latest and greatest technology in terms of phones, mobile devices, firewalls, a lot of hardware."  Anthony stated he must renew software licenses annually.  Anthony testified that a change in the economy resulted in him having less business in 2018 than in 2016 and 2017.

¶ 5      Anthony testified that he is paid by CompAdvise "through formal payroll and through deductions—or distributions."  He testified he receives $3000 quarterly from CompAdvise and he takes a cash distribution of $5000 on a monthly basis.  He described a "true up" that occurs at the end of the year as follows:

> "Because I am a W-2 employee, I am not required to file quarterly.  So because the nature of my business can be up or down, I tend to see where I am going to fall at the end of the year.
>
> So I purposely wait to see how everything shakes out because I don't want to pay quarterly.  And if something bad was to happen to me and I wouldn't have the funds to conduct my business, I want to have that cushion.
>
> So with my accountant, and this has been consistent since inception, we True-Up at the end of the year and I paid the tax on the income received from that year, but that's always been at year end."

¶ 6     Anthony testified regarding the value of a checking account in the name of CompAdvise (hereinafter, the "cash account"). The value of the cash account at the end of 2017 was $171,088. The cash account held the same or nearly the same amount at the time of trial. When asked what is the reason for that level of cash in the cash account, Anthony testified:

> "The level of cash that's maintained in CompAdvise is to use for investment, to continuing education to stay current, to cushion me against any loss of work that may occur, to cushion me against the ability to receive on invoices that I submit.
>
> It also provides an account for me to hold the tax liability for the end of the calendar year."

Anthony testified he has held that tax liability in the cash account throughout the period between 2013 and 2017 and it was his practice throughout the marriage. He stated the money currently in the cash account was for the total 2018 tax liability on all income and distributions from CompAdvise.

¶ 7     Anthony's valuation expert Lee Gould was asked how he would describe CompAdvise's growth over the period 2013 to 2017, which are the years the expert looked at when he performed his valuation of the company. The expert answered, "If one were to define growth based on revenues, I would say it was significant. It went from approximately 350,000 to over a million dollars during the period 2013 to 2017." Gould testified CompAdvise's revenues increased in 2016 and 2017 because of increased business in one category that had not existed in previous years. CompAdvise did not maintain that level of business in 2018.

¶ 8     The judgment of dissolution held that the cash account was a marital asset. The judgment noted that Anthony "testified that every dime that CompAdvise has earned during the marriage has been earned through his personal effort." The court also noted the testimony that Anthony

had sole authority to distribute the assets of the corporation. The judgment noted Anthony's testimony that "cash is held by CompAdvise to invest in continuing education and to cushion him against any loss of work that may occur." The judgment specifically found credible Anthony's testimony that cash in the cash account is held to pay Anthony and Tracy's personal tax liability. Nonetheless, the judgment found "[n]o evidence was introduced that CompAdvise used the cash [in the cash account] to fund any business activities and no evidence was introduced that CompAdvise relied on the cash to operate its business." The judgment held, in pertinent part, as follows:

"19. The court finds that the cash *** held by CompAdvise [was] acquired during the marriage and [is] therefore presumed to be marital. The court also finds that [Anthony] has failed to meet his burden of showing by clear and convincing evidence that said assets held by CompAdvise fall within one of the exceptions listed in section 503(a) of the Illinois Marriage and Dissolution of Marriage Act.

20. These assets were acquired by CompAdvise after the parties' marriage and constitute new and distinguishable property. All of the assets are sufficiently separable and distinct from one another, and their acquisition clearly constitutes more than an increase in value of CompAdvise. Therefore, these assets, having been acquired after the parties' marriage, and not shown by [Anthony] to be among the nonmarital exceptions listed in sections 503(a)(1) through (a)(6) of the Act, are marital property."

¶ 9     In discussing nonmarital property the judgment found that the parties stipulated that Anthony acquired CompAdvise prior to the marriage and noted that under the Act the increase in the value of nonmarital property is also nonmarital property subject to reimbursement to the

marital estate. However, the judgment found "no evidence was submitted regarding the value of CompAdvise prior to the marriage;" thus, "evidence of substantial appreciation to CompAdvise during the marriage is lacking." The judgment held the cash in the cash account is marital property and excluded the cash account from the valuation of CompAdvise. Regarding reimbursement, the judgment found, in pertinent part, that the "vast majority of the marital assets owned by the parties were acquired with assets and income of CompAdvise" including cash in the cash account and a salon Tracy operated. The judgment held that even had evidence of substantial appreciation in CompAdvise been presented "the marital estate is not entitled to any reimbursement for any increase in the value of CompAdvise during the marriage." The court found that Anthony's "salary, distributions, and use of CompAdvise's other assets and income to acquire marital assets adequately compensated the marital estate for his contribution of personal effort."

¶ 10    The judgment of dissolution orders that the cash in the cash account will be used to pay the parties' 2018 federal and state income taxes and awards each party 50% of the remaining balance of that account. The judgment awards Anthony CompAdvise "as his non-marital property."

¶ 11    In May 2019 Anthony filed a motion to reconsider. After full briefing by the parties, in September 2019 the trial court entered a written judgment denying Anthony's motion to reconsider.

¶ 12    This appeal followed.

¶ 13                                    ANALYSIS

¶ 14    On appeal Anthony argues the trial court's finding that the cash account is a marital asset is against the manifest weigh of the evidence. The Illinois Marriage and Dissolution of Marriage Act (Act) controls the disposition of property in a dissolution proceeding. 750 ILCS 5/503 (West

2014), *In re Marriage of Stuhr*, 2016 IL App (1st) 152370, ¶ 49. Section 503(d) of the Act instructs the trial court to divide marital property in "just proportions." *In re Marriage of Mathis*, 2012 IL 113496, ¶ 26, 750 ILCS 5/503(d) (West 2014). "Before a court may distribute property upon the dissolution of a marriage, it must first classify the property as either marital or nonmarital. [Citation.]" *In re Marriage of Stuhr*, 2016 IL App (1st) 152370, ¶ 49. On review, we will not disturb the trial court's classification of an asset as marital or nonmarital unless it is against the manifest weight of the evidence. *Id.*

> "[A] decision is against the manifest weight of the evidence only when an opposite conclusion is clearly apparent or when the court's findings appear to be unreasonable, arbitrary, or not based upon the evidence. [Citations.]" (Internal quotation marks omitted.) *Id*.

¶ 15 The Act defines "marital property" as follows:

> "For purposes of this Act, 'marital property' means all property, including debts and other obligations, acquired by either spouse subsequent to the marriage, except the following, which is known as 'non-marital property':
>
> * * *
>
> (7) the increase in value of non-marital property, irrespective of whether the increase results from a contribution of marital property, non-marital property, the personal effort of a spouse, or otherwise, subject to the right of reimbursement provided in subsection (c) of this Section; and
>
> (8) income from property acquired by a method listed in paragraphs (1) through (7) of this subsection if the income is not attributable to the personal effort of a spouse." 750 ILCS 5/503(a) (West 2018).

Subsection (c), in turn, provides in pertinent part that:

"When a spouse contributes personal effort to non-marital property, it shall be deemed a contribution from the marital estate, which shall receive reimbursement for the efforts if the efforts are significant and result in substantial appreciation to the non-marital property except that if the marital estate reasonably has been compensated for his or her efforts, it shall not be deemed a contribution to the marital estate and there shall be no reimbursement to the marital estate. The court may provide for reimbursement out of the marital property to be divided or by imposing a lien against the non-marital property which received the contribution." 750 ILCS 5/503(c)(2)(B) (West 2018),

¶ 16    Thus, the Act distinguishes marital property from nonmarital property based on when the property was acquired. *In re Marriage of Zamudio and Ochoa*, 2019 IL 124676, ¶ 18. Section 503(b) of the Act creates a rebuttable presumption that all property acquired during the marriage is marital property. *Id.* ¶ 17, *In re Marriage of DeRossett*, 173 Ill. 2d 416, 420 (1996) ("section 503(b) creates a rebuttable presumption that all property acquired after marriage is marital property"), 750 ILCS 5/503(b)(1) (West 2014). The presumption may be overcome by showing the property was acquired by a method listed in section 503(a) of the Act. *In re Marriage of DeRossett*, 173 Ill. 2d at 420, *In re Marriage of Stuhr*, 2016 IL App (1st) 152370, ¶ 51.

¶ 17    In this case, there is no dispute that Anthony "acquired" CompAdvise before the marriage and therefore the business is nonmarital property. There is also no dispute that Anthony contributed personal effort to CompAdvise. Anthony does dispute whether the marital estate is entitled to be reimbursed for his personal effort to CompAdvise from the cash account. First, Anthony asserts the funds in the cash account represent "growth in the value of the non-marital business" which is his nonmarital property, but for which, the marital estate would be entitled to reimbursement. See 750 ILCS 5/503(c)(2)(B) (West 2018) ("When a spouse contributes

personal effort to non-marital property, it shall be deemed a contribution from the marital estate, which shall receive reimbursement for the efforts if the efforts are significant and result in substantial appreciation to the non-marital property"). However, Anthony argues, the marital estate has been "reasonably compensated for his *** efforts" separately by his salary and it is not entitled to reimbursement from or by the cash account. See *id.* ("except that if the marital estate reasonably has been compensated for his or her efforts, it shall not be deemed a contribution to the marital estate and there shall be no reimbursement to the marital estate"). In support of his claim the marital estate has been reasonably compensated, Anthony argues that he "rendered credible and unrefuted testimony as to the reasonableness of his compensation;" the cash account was an integral part of the business used to pay legitimate business expenses; and his pattern and practice of withdrawals from the cash account was consistent throughout the marriage.

¶ 18    This court recently addressed the issue of retained earnings in a corporation for purposes of a child support calculation. *In re Marriage of Moorthy and Arjuna*, 2015 IL App (1st) 132077. In that case, one spouse sought an increase in child support on the basis that the obligor spouse's income had increased. *In re Marriage of Moorthy and Arjuna*, 2015 IL App (1st) 132077, ¶ 4. The question before the court was "whether retained earnings of a closely held corporation should be included in a supporting parent's income." *Id.* ¶ 36. The court examined several authorities on the issue of retained earnings, including *In re Marriage of Joynt*, 375 Ill. App. 3d 817 (2007), and *In re Marriage of Lundahl*, 396 Ill. App. 3d 495 (2009), both of which addressed the question of whether retained earnings were marital property and which reached different conclusions on that question based on the individual facts of those cases. We believe the analysis laid out in *Arjuna* is equally applicable to the question of whether retained earnings in a closely held corporation constitute marital property as to the question of whether retained earnings should be considered for purposes of determining the level of child support.

¶ 19    The *Arjuna* court held that:

> "[C]ourts should engage in a case-by-case, fact-specific analysis to determine whether retained earnings of a corporation should be imputed to the sole or majority shareholder. \*\*\*  Relevant factors in this analysis include: (1) the extent of the obligor's ownership share in the corporation, (2) the obligor's ability to decide whether corporate earnings should be retained or distributed, (3) the corporation's history of retained earnings and distributions, in comparison to post-divorce corporation activities, (4) whether the retained earnings are excessive, and (5) whether there is evidence that income is actually being manipulated. \*\*\*  [H]eightened scrutiny is appropriate when the obligor has the power to control distributions, but this, in itself, is not dispositive. \*\*\*  [I]t is sometimes necessary for a corporation to retain profits in order to secure its continued existence and appropriate capitalization to meet ongoing business necessities." *In re Marriage of Moorthy & Arjuna*, 2015 IL App (1st) 132077, ¶ 64.

¶ 20    Anthony notes that in denying his motion to reconsider the classification of the cash account as marital property, the trial court relied heavily on this court's decision in *In re Marriage of Lundahl*, 396 Ill. App. 3d 495.  In *Lundahl*, this court held that the retained earnings of a subchapter S corporation solely owned by the spouse were "properly classified as marital property by the trial court." *Lundahl*, 396 Ill. App. 3d at 504.  This court carefully examined the decision in *In re Marriage of Joynt*, 375 Ill. App. 3d 817, on which the trial court in *Lundahl* had relied. *Lundahl*, 396 Ill. App. 3d at 501-02.  The *Joynt* court had held that "if the shareholder spouse controls the corporate distribution, the retained earnings are marital property." *In re Marriage of Joynt*, 375 Ill. App. 3d at 820.  The *Joynt* court rejected the argument the retained earnings should be classified as income available to the shareholder. *Id.*  The *Joynt* court found

that, in that case, "the retained earnings were part of the corporate assets." *Id.* at 821. An expert witness testified in *Joynt* that the corporation held the earnings to pay expenses and, although the corporation's earnings were taxed on the parties' individual tax returns the corporation paid the parties' individual income tax through year-end payments. *Id.*

¶ 21 Notably, for purposes of this appeal, the *Joynt* court further noted that "as the president of the company, [the spouse] received a salary, plus biannual bonuses, as compensation for managing the daily operations. The only expert testimony found in the record indicates that [the spouse's] compensation during the marriage was reasonable and fair for the services he provided." *Id.* The *Joynt* court also found there was insufficient evidence to support the conclusion the retained earnings account was used to shelter marital income. *Id.* The court ultimately concluded that because the spouse "was unable to authorize a payment of the retained earnings as a dividend without shareholder approval and because the earnings were a corporate asset, we hold that the retained earnings account of the corporation is a nonmarital asset." *Id.* The *Lundahl* court reached an opposite conclusion, holding that the retained earnings in that case constituted the spouse's income rather than an asset of the corporation. *In re Marriage of Lundahl*, 396 Ill. App. 3d at 504. The *Lundahl* court found that, contrary to *Joynt*, the retained earnings were not held to pay expenses, were not used to pay dividends, and were not used in connection with the corporation.

¶ 22 Anthony argues the trial court's reliance on *Lundahl* is misplaced because the court decided *Lundahl* before amendments to the Act "specifically stating that there shall be no reimbursement to the marital estate *** when the marital estate was reasonably compensated for those efforts." Anthony claims the *Lundahl* court, and thus the trial court in this case, "sidestepped" the issue of reasonable compensation and "[u]nder the trial court's *Lundahl*-dependent theory, the new statutory scheme *** was rendered meaningless." In 2016, the

legislature amended section 503 of the Act adding the current version of section 503(c)(2)(A). 750 ILCS 5/503(c)(2)(A) (West 2016). *Supra*, ¶ 16. Prior to the amendment, the statute did not contain the "except that if the marital estate reasonably has been compensated" language but read, in pertinent part, as follows:

> "2) When one estate of property makes a contribution to another estate of property, or when a spouse contributes personal effort to non-marital property, the contributing estate shall be reimbursed from the estate receiving the contribution notwithstanding any transmutation; provided, that no such reimbursement shall be made with respect to a contribution which is not retraceable by clear and convincing evidence, or was a gift, or, in the case of a contribution of personal effort of a spouse to non-marital property, unless the effort is significant and results in substantial appreciation of the non-marital property. Personal effort of a spouse shall be deemed a contribution by the marital estate." 750 ILCS 5/503(c)(2) (West Supp. 2015).

¶ 23    Anthony's argument notwithstanding we note the *Lundahl* court expressly noted the spouse's argument in that case relying on "a string of cases which holds that a business property interest owned by one spouse prior to the parties' marriage is nonmarital property and retains its nonmarital classification despite a significant increase in its value attributable to personal efforts of a spouse; *and that if the husband makes a reasonable salary during the marriage, the marital estate is not entitled to reimbursement.*" (Emphasis added.) *In re Marriage of Lundahl*, 396 Ill. App. 3d at 502 (and cases cited therein). Despite that acknowledgement and despite noting the spouse's salary from the corporation in that case (*id.* at 497), the *Lundahl* court did not expressly consider the spouse's salary in its final determination that the retained earnings constituted the spouse's income. See *id.* at 504 (distinguishing *Joynt*). The *Joynt* court, on the other hand, did

- 11 -

rely—in part—on the spouse's salary from the corporation and the fact that the salary "was reasonable and fair for the services he provided" for its holding that the retained earnings were a nonmarital asset. See *In re Marriage of Joynt*, 375 Ill. App. 3d at 821.

¶ 24    In this case, we are faced with the trial court's holding that Anthony's "salary, distributions, *and use of CompAdvise's other assets and income to acquire marital assets* adequately compensated the marital estate for his contribution of personal effort to CompAdvise." (Emphasis added.)  The trial court included the cash account ("other assets and income"), which it had already determined to be marital property, in its consideration of adequate compensation to the marital estate.  The court found that the "vast majority of the marital assets *** were acquired with assets and income of CompAdvise" including specifically the cash account.  Thus, we must conclude that Anthony's use of the cash account constituted a portion of the reasonable compensation he argues the trial court failed to consider.  We cannot say the trial court would find the marital estate "reasonably has been compensated for [Anthony's] efforts" (750 ILCS 5/503(c)(2)(B) (West 2018)) absent the classification of the cash account as marital property.  Accordingly, Anthony's argument that "the trial court's determination that the [cash] account was marital *** was improper on the sole basis that the trial court found sufficient compensation to the marriage" fails.

¶ 25    Further, "[b]efore a court may distribute property upon the dissolution of a marriage, it must *first* classify the property as either marital or nonmarital." (Emphasis added.)  *In re Marriage of Stuhr*, 2016 IL App (1st) 152370, ¶ 49, *In re Marriage of Asta and Pappas*, 2016 IL App (2d) 150160, ¶ 16 ("Before distributing property as part of the dissolution of a marriage, the trial court must first determine whether that property is marital or nonmarital.").  The trial court *first* determined that the cash account was marital property; it then determined that, including the cash account in marital property, Anthony's salary and use of funds from CompAdvise

reasonably compensated the marital estate for his personal efforts toward CompAdvise. A decision is against the manifest weight of the evidence "only when an opposite conclusion is clearly apparent or when the court's findings appear to be unreasonable, arbitrary, or not based upon the evidence. [Citations.]" (Internal quotation marks omitted.) *Id.* We cannot say either holding of the trial court is against the manifest weight of the evidence.

¶ 26    In this case the trial court considered the proper evidence in holding the cash account was marital property. "[I]f the shareholder spouse controls the corporate distribution, the retained earnings are marital property." *In re Marriage of Joynt*, 375 Ill. App. 3d at 820. "[O]ther states have generally held that retained earnings are nonmarital by evaluating two primary factors: '(1) the nature and extent of the stock holdings, *i.e.*, is a majority of the stock held by a single shareholder spouse with the power to distribute the retained earnings; and (2) to what extent are retained earnings considered in the value of the corporation.' *In re Marriage of Joynt*, 375 Ill. App. 3d at 819." *In re Marriage of Lundahl*, 396 Ill. App. 3d at 503.

¶ 27    Anthony is the sole shareholder of CompAdvise. He too "could have unilaterally declared or withheld dividends or distributions from the company." *In re Marriage of Lundahl*, 396 Ill. App. 3d at 503 (finding retained earnings were "not in fact an asset of the corporation but, rather, constituted *** income").

¶ 28    Regarding the extent to which the cash is considered in the value of the company, the trial court found that the cash account is used to pay the parties' personal tax liability but "[n]o evidence was introduced that CompAdvise used the cash to fund any business activities and no evidence was introduced that CompAdvise relied on the cash to operate its business." Nor has Anthony pointed to any such evidence, other than his own testimony, on appeal. There is no evidence the cash account "is a practical necessity of running the business." *Cf. In re Marriage of Arjuna*, 2015 IL App (1st) 132077, ¶ 66 (tax returns outline use of retained earnings for

"various expenses *** several types of necessary business insurance, expenses *** and significant amounts dedicated to [other] work *** concerns of its employees"). "The party claiming that the property is nonmarital carries the burden of proof, and any doubts regarding the nature of the property will be resolved in favor of a finding that the property is marital. [Citation.]" *In re Marriage of Romano*, 2012 IL App (2d) 091339, ¶ 45. Anthony failed to meet that burden. In light of the foregoing, the conclusion the cash account is not marital property is not "clearly apparent" nor is the trial court's finding to the contrary "unreasonable, arbitrary, or not based upon the evidence."

¶ 29    The trial court's judgment the cash account is marital property because it is property acquired during the marriage that was not acquired by one of the means listed in section 503(a) of the Act (see 750 ILC 5/503(c)(2)(B) (West 2018)) is not against the manifest weight of the evidence. *In re Marriage of Zamudio and Ochoa*, 2019 IL 124676, ¶ 17 ("Section 503(b) establishes a presumption that all property acquired during the marriage is marital"); *In re Marriage of DeRossett*, 173 Ill. 2d 416, 420 (1996) ("Section 503(a) contains an 'exclusive' and 'specific' list of nonmarital property"); *In re Marriage of Foster*, 2014 IL App (1st) 123078, ¶ 77 (party claiming property acquired during the marriage is nonmarital has the burden to prove "by clear and convincing evidence that the property fell within one of the exceptions listed in section 503(a) of the Act").

¶ 30    The trial court also properly awarded the cash account, which as demonstrated above is the parties' marital property, to the marital estate. The trial court did not err in awarding the funds in the cash account to the marital estate after the payment of the parties' tax liability because the funds were marital property and the finding that the funds in the cash account formed part of the compensation to the marital estate for Anthony's personal effort in generating those funds is not against the manifest weight of the evidence. The trial court's judgment is

based on the evidence. The trial court's order reflects that it considered the parties' use of funds from CompAdvise in assessing the compensation to the marital estate for Anthony's contribution of personal effort to the business. Anthony does not dispute that "every dime" CompAdvise makes is attributable to his personal effort. There is no dispute of the trial court's finding that almost all of the parties' marital acquisitions were funded by earnings from CompAdvise which necessarily included funds passing through the cash account, including petitioner's salon, Anthony's cars, and the parties' personal investments. *Cf. In re Marriage of Perlmutter*, 225 Ill. App. 3d 362, 372 (1992) (concluding that salary alone was in fact reasonable compensation for his efforts; as such, the marital estate had already been compensated; and holding the trial court's finding that the marital estate is entitled to additional reimbursement was against the manifest weight of the evidence"). See also *In re Marriage of Smith*, 86 Ill. 2d 518, 530-32 (1981) (holding spouse may hold property as nonmarital by segregating the property from the marital assets but where "the spouse has failed to segregate the property during the marriage, *** the commingled property has not been acquired by a method described in section 503(a)"). In *Smith*, our supreme court held as follows:

> "Nonmarital property, of course, may still retain its character, despite a contribution of marital funds. We have simply interpreted section 503 as establishing a rebuttable presumption that the contribution is intended to change the character of the property to marital. That result, however, requires affirmative action by the parties-it cannot *** occur as the result of economic appreciation alone.
>
> We accordingly hold that the preference indicated by the legislature for the classification of property as marital can best be served by presuming that the contributors of marital property to nonmarital property intended that the

commingled property be treated as marital. In other words, the failure of a nonmarital property holder to segregate that property will give rise to the rebuttable presumption that the nonmarital property has been transmuted, regardless of the status of title." *In re Marriage of Smith*, 86 Ill. 2d at 531-32.

¶ 31 The record contains evidence Anthony failed to segregate the funds in the cash account as nonmarital property or to use the funds exclusively for the business. *Supra*, ¶ 30. The evidence therefore also supports finding Anthony's affirmative actions in his use of the funds in the cash account transmuted those funds into marital property. *Smith*, 86 Ill. 2d at 529-32. Regardless, the trial court's finding that the marital estate was reimbursed in part by the funds in the cash account, in light of the parties' use of those funds, is substantiated and rational, and not against the manifest weight of the evidence.

¶ 32                                    CONCLUSION

¶ 33 For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 34 Affirmed.